**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X

PATRICIO JIMENEZ and MARIBEL
GONZALEZ-MOSSO JIMENEZ,

                 **Plaintiffs,**

           - against -

THE CITY OF NEW YORK; DETECTIVE
JAMES QUILTY; NEW YORK CITY
HEALTH AND HOSPITALS
CORPORATION; HARLEM HOSPITAL
CENTER; KRYSTAL MERRITT; HANNA
COHEN; CYRACOM INTERNATIONAL,
INC.; THE MOUNT SINAI HOSPITAL;
MOUNT SINAI HOSPITALS GROUP, INC.;
REYNOLD TROWERS; and JOHN/JANE
DOE #1-3,

                 **Defendants.**

-------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10-9-14

**OPINION AND ORDER**

**14 Civ. 02994 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

        Patricio Jimenez and Maribel Gonzalez-Mosso Jimenez bring this

action against the City of New York ("the City"), New York City Health and

Hospitals Corporation ("NYCHHC"), Harlem Hospital Center ("HHC"), Detective

James Quilty, Krystal Merritt, and Reynold Trowers (collectively, the "City

1

Defendants") alleging claims under Section 1983 of Title 42 of the United States Code ("Section 1983") and pendant state law claims. Plaintiffs allege false arrest, denial of substantive due process, assault and battery, negligence, negligent retention and supervision, malicious abuse of process, and malicious prosecution. Plaintiffs also bring an Equal Protection claim as well as a *Monell* claim against the City alleging a policy of racial discrimination in violation of the Fourteenth Amendment. Plaintiffs additionally bring state law claims of negligence and negligent retention and supervision against The Mount Sinai Hospital, Mount Sinai Hospitals Group, Inc., Hannah Cohen s/h/a Hanna Cohen (collectively, the "Mount Sinai Defendants"); and CyraCom International, Inc.[1]

The City Defendants now move to dismiss the negligence, negligent retention and supervision, malicious abuse of process, Equal Protection, and *Monell* claims. The Mount Sinai and CyraCom Defendants also move to dismiss all claims against them. For the reasons that follow, the Mount Sinai and CyraCom Defendants' motions are granted in full, and the City Defendants' motion is

---

[1] Plaintiffs also brought claims of unlawful stop and search, negligent hiring, and loss of consortium, which they either have agreed to withdraw, or are no longer pursuing. *See* Memorandum of Law in Opposition to the Defendants' Motions to Dismiss the First Amended Complaint ("Pl. Opp."), at 14.

granted in part and denied in part.[2]

## II.    BACKGROUND[3]

On December 26, 2012, Mrs. Jimenez was at home when she became dizzy, fell, and was unable to stand.[4]  Her eleven-year-old daughter called 911 and requested an ambulance.[5]  EMS workers arrived and asked Mrs. Jimenez in English whether she had been physically abused by her husband.[6]  Her daughter translated for Mrs. Jimenez and told the EMS workers that she had not been abused and had fallen.[7]

EMS took Mrs. Jimenez to Harlem Hospital Center and falsely told

---

[2]    The City Defendants are also moving to dismiss the section 1983 claim but concede that claims against Detective Quilty and John/Jane Doe should be allowed to proceed.  *See* The City Defendants' Memorandum of Law in Support of Their Motion to Dismiss Portions of the First Amended Complaint, at 1.  These claims, which include false arrest and malicious prosecution, are encompassed within plaintiffs' section 1983 claim.

[3]    The facts below are taken from the First Amended Complaint ("FAC").

[4]    *See* FAC ¶ 45.

[5]    *See id.* ¶ 46.

[6]    *See id.* ¶ 47.

[7]    *Id.*

the hospital staff that she was a victim of domestic abuse.[8]  Mrs. Jimenez was

attended by Reynold Trowers, a doctor with HHC and NYCHHC, Krystal Merritt,

a social worker with HHC and NYCHHC, and Hannah Cohen, a volunteer with the

Mount Sinai Hospital ("MSH") Sexual Assault and Violence Intervention Program

("SAVI") (collectively, the "Hospital Defendants").[9]  As none of the Hospital

Defendants were fluent in Spanish, they contacted CyraCom to provide an

interpreter.[10]  Through the interpreter, Mrs. Jimenez told the Hospital Defendants

that she had become dizzy and had fallen.[11]  The Hospital Defendants, through the

interpreter, told Mrs. Jimenez that she had diabetes and was suffering symptoms of

hyperglycemia.[12]  The conversation between Mrs. Jimenez and the Hospital

Defendants through the CyraCom interpreter lasted about two minutes.[13]

   Subsequently, the Hospital Defendants and the CyraCom interpreter

"conspired together, creating false records for and statements by Mrs. Jimenez,

---

[8] *See id.* ¶¶ 48–49.  Interestingly, no EMS employee is named as a
defendant.

[9] *See id.* ¶ 52.

[10] *See id.* ¶ 54.

[11] *See id.* ¶ 56.

[12] *See id.* ¶ 58.

[13] *See id.* ¶ 60.

stating . . . that she had reported she had been physically abused by her husband, Mr. Jimenez. At the time that they created these records and allegations, the Hospital Defendants and Defendant CyraCom Agent knew the allegations to be false."[14] The Hospital Defendants then called members of the NYPD to the hospital and reported that Mrs. Jimenez had been the victim of domestic violence and provided the NYPD with medical records and other information.[15] The NYPD then supplied this information to Detective James Quilty.[16]

Approximately two weeks later, Detective Quilty and his partner, who spoke Spanish, went to Mrs. Jimenez's home and spoke with her.[17] She told Detective Quilty's partner that she had not been abused by her husband, and that she had become dizzy and fallen because she had not been regulating her blood sugar.[18] Detective Quilty's partner relayed this information to Detective Quilty.[19] Detective Quilty and his partner returned to the Jimenez home one week later and told Mrs. Jimenez that they would report Mr. Jimenez to immigration officials if he

---

[14]    *Id.* ¶¶ 62–63.

[15]    *See id.* ¶¶ 64–65.

[16]    *See id.* ¶ 67.

[17]    *See id.* ¶¶ 74–75.

[18]    *See id.* ¶¶ 76–77.

[19]    *See id.* ¶ 78.

did not turn himself in.[20] Believing he had no choice, Mr. Jimenez turned himself in on January 30, 2013, and was placed under arrest by Detective Quilty.[21]

Following his arrest, Detective Quilty and his partner lied to the New York County District Attorney's Office by reporting that Mr. Jimenez had violated various provisions of the New York Penal Law, and further lied by telling the prosecutors that Mrs. Jimenez reported being the victim of domestic abuse.[22] Detective Quilty and his partner then "swore out [an] information alleging that Mr. Jimenez should be deported from the United States as a result of violating New York Penal Law . . . ."[23] As a result, Mr. Jimenez was held on an immigration detainer.[24]

Throughout the pendency of the criminal proceedings, Detective Quilty, his partner, and the Hospital Defendants forwarded false evidence to the New York County District Attorney's Office and immigration officials.[25] However, on March 7, 2013, the charges against Mr. Jimenez were dismissed, and

---

[20]     *See id.* ¶¶ 80–81.

[21]     *See id.* ¶ 85.

[22]     *See id.* ¶¶ 89–90.

[23]     *See id.* ¶ 98.

[24]     *See id.* ¶ 100.

[25]     *See id.* ¶ 101.

the immigration detainer was lifted on March 8, 2013.[26]

Mr. Jimenez was held in custody from January 30, 2013, until March 8, 2013.[27] He suffered emotional distress, physical injury, mental anguish, fear, pain, anxiety, embarrassment, humiliation, lost pay, and damage to his reputation.[28] Mrs. Jimenez suffered emotional distress, loss of consortium, mental anguish, fear, anxiety, embarrassment, and humiliation.[29]

Plaintiffs allege that these events transpired because of discrimination against them based on their ethnicity.[30] Plaintiffs claim that the "NYPD['s] discriminatory program is pervasive and evident throughout many of its practices."[31] These practices include stop and search tactics aimed at minorities, including the Clean Halls Buildings program, and stop and frisk policies that discriminate against minorities.[32] Plaintiffs also cite the rate of marijuana arrests, which is significantly higher for Hispanics and Blacks than for Whites, as well as

---

[26]    *See id.* ¶¶ 102–103.

[27]    *See id.* ¶ 104.

[28]    *See id.* ¶ 105.

[29]    *See id.*

[30]    *See id.* ¶ 159.

[31]    *Id.* ¶ 160.

[32]    *See id.* ¶¶ 163, 165.

arrest records in general, in which minorities represent the majority of arrestees, although they comprise a small portion of the population.[33]

Further, plaintiffs allege that the NYPD has a "*de facto* quota/productivity policy that encourages unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury."[34] This policy requires police officers to make a certain number of arrests within a certain time period.[35] Officers who meet this quota are classified as active officers and are given promotion and overtime opportunities.[36] Finally, plaintiffs allege that members of the NYPD are able to meet these quotas by targeting minorities.[37]

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "'accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor.'"[38] The court evaluates the

---

[33] *See id.* ¶¶ 171–174.

[34] *Id.* ¶ 182.

[35] *See id.* ¶ 183.

[36] *See id.* ¶¶ 184, 186–187.

[37] *See id.* ¶ 200.

[38] *Freidus v. Barclays Bank PLC*, 734 F.3d 132, 137 (2d Cir. 2013).

sufficiency of the complaint under the "two-pronged approach" suggested by the Supreme Court in *Ashcroft v. Iqbal*.[39]  Under the first prong, a court may "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[40]  For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[41]  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[42]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[43]  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully."[44]

The plaintiff in support of her claim may allege "upon information and belief" facts that are "peculiarly within the possession and control of the

---

[39]     *See* 556 U.S. 662, 678–79 (2009).

[40]     *Id.* at 679.

[41]     *Id.* at 678.

[42]     *Id.* at 679.

[43]     *Id.* at 678.

[44]     *Id.* (quotation marks omitted).

defendant."[45]  Conversely, the plaintiff should not allege upon information and belief matters that are presumptively within her personal knowledge, unless she rebuts the presumption.[46]  Such matters include "'matters of public record or matters generally known in the community . . . inasmuch as everyone is held to be conversant with them.'"[47]

## B.    Leave to Replead

Federal Rule of Civil Procedure 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[48]  Although "[t]he Court should freely give leave when justice so requires,"[49] it is "within the sound discretion of the district court to grant or deny leave to amend."[50]  When a motion

---

[45]    *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010).

[46]    *See Sanders v. Grenadier Realty, Inc.*, 367 Fed. App'x 173, 177 n.2 (2d Cir. 2010).

[47]    *Id.* (quoting 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1224, at 300–01 (3d ed. 2004)).

[48]    *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[49]    Fed. R. Civ. P. 15(a)(2).

[50]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

to dismiss is granted, "'[i]t is the usual practice . . . to allow leave to replead.'"[51] Where a plaintiff inadequately pleads a claim and cannot offer additional substantive information to cure the deficient pleading, granting leave to replead is futile.[52]

## IV.    APPLICABLE LAW

### A.    Section 1983

"'To state a claim under § 1983, a plaintiff (1) must allege the violation of a right secured by the Constitution and laws of the United States, and (2) must show that the alleged deprivation was committed by a person acting under color of state law.'"[53]  Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[54]  Imposition of liability under section 1983 requires a defendant's direct involvement in the alleged constitutional violation.  "Because vicarious

---

[51]    *Schindler v. French*, 232 Fed. App'x 17, 19 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[52]    *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[53]    *Gleason v. Scoppetta*, 566 Fed. App'x 65, 68 (2d Cir. 2014) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

[54]    *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)).

liability is inapplicable to . . . [section] 1983 suits, a plaintiff must [prove] that each Government-official defendant, through the official's own individual actions, has violated the Constitution."[55]

### 1. *Monell*

In *Monell v. New York City Department of Social Services*, the Supreme Court held that to establish a claim against a municipality under section 1983, a plaintiff must show harm resulting from an identified municipal "policy or custom."[56] A municipality may not be found liable simply because one of its employees or agents is guilty of some wrongdoing.[57] In the absence of an established written municipal policy, a plaintiff must prove that a practice "'was so persistent or widespread as to constitute a custom or usage with the force of law,'"[58] or that a practice or custom of subordinate employees was "'so manifest as to imply the constructive acquiescence of senior policy-making officials.'"[59] Thus,

---

[55] *Iqbal*, 556 U.S. at 676–77 (citations omitted).

[56] 436 U.S. 658, 694 (1978).

[57] *See Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011).

[58] *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004)) (other quotation marks omitted).

[59] *Id.* (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)).

municipal liability under section 1983 may be established through evidence that "the municipality's practice, as opposed to its formal policy, is to engage in the constitutional violation at issue."[60]  Finally, the policy or custom must be the "moving force" behind the injury alleged.[61]

### 2. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that "all persons similarly situated should be treated alike."[62]  To establish an Equal Protection claim, a plaintiff must prove "(1) that he or she was treated differently from other similarly situated individuals, and (2) that the 'treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"[63]  Moreover, the discrimination must be purposeful.[64]

### B. State Law Claims

### 1. Negligence and Negligent Supervision and Retention

---

[60]    *Id.* (citing *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125–26 (2d Cir. 2004)).

[61]    *See Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997).

[62]    *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

[63]    *Bush v. City of Utica, N.Y.*, 558 Fed. App'x 131, 134 (2d Cir. 2014) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609–10 (2d Cir. 1980)).

[64]    *See Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005).

To establish a prima facie case of negligence in New York, a plaintiff must show: (1) a duty on the part of the defendant; (2) a breach of that duty by conduct involving an unreasonable risk of harm; (3) damages suffered by the plaintiff; and (4) causation, both in fact and proximate, between the breach and the plaintiff's harm.[65]  However, "allegations of intentional conduct cannot form the basis of a claim founded in negligence."[66]  A claim of negligent supervision and retention requires a plaintiff to allege "that the defendant knew or should have known of its employee's propensity to engage in the conduct that caused the plaintiff's injuries, and that the alleged negligent supervision or retention was a proximate cause of those injuries."[67]

### 2.  Abuse of Process

"In New York, a malicious abuse of process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse or justification, and (3) in order to obtain a collateral objective that is outside the

---

[65]  *See Salvador v. New York Botanical Garden*, 895 N.Y.S.2d 410, 423 (2010) (citing *Febesh v. Elcejay Inn Corp.*, 555 N.Y.S.2d 46, 47 (1st Dep't 1990)).

[66]  *Dunn v. Brown*, 690 N.Y.S.2d 81, 81 (2d Dep't 1999).

[67]  *Gray v. Schenectady City Sch. Dist.*, 927 N.Y.S.2d 442, 445 (3d Dep't 2011) (citing *State Farm Ins. Co. v. Central Parking Sys.*, 796 N.Y.S.2d 665 (2d Dep't 2005)).

legitimate ends of the process."[68]  The malicious abuse of criminal process may give rise to a section 1983 claim, because the resulting deprivation of liberty is "'by definition a denial of procedural due process.'"[69]

The Second Circuit has held that to state a claim for abuse of criminal process, an improper or malicious motive is not sufficient.[70]  Rather, the defendants must have "aimed to achieve a collateral purpose beyond or in addition to [plaintiff's] criminal prosecution."[71]  In other words, the proper use of legal process based on an improper or malicious motive such as a desire for retaliation is insufficient to satisfy the "collateral objective" requirement.[72]  There must be an abuse of process, that is, a use of process that has as its direct object the achievement of an improper and ulterior *purpose or objective*."[73]  Finally, the

---

[68]    *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994) (citing *Curiano v. Suozzi*, 63 N.Y.2d 113, 116 (1984); *Board of Educ. v. Farmingdale Classroom Teachers Ass'n*, 38 N.Y.2d 397, 403 (1975)).

[69]    *Cook*, 41 F.3d at 80 (quoting *Jennings v. Shuman*, 567 F.2d 1213, 1220 (3d Cir. 1977)).

[70]    *See Savino v. City of New York*, 331 F.3d 63, 77 (2d Cir. 2003).

[71]    *Id.*

[72]    *See id.* at 77–78 (citing *Dean v. Kochendorfer*, 237 N.Y. 384 (1924) (distinguishing between improper motive and improper purpose)). *See also Hauser v. Bartow*, 273 N.Y. 370, 374 (1937) (finding no abuse of process because "whatever may have been respondent's motives, she used the process of the court for the purpose for which the law created it").

[73]    *Savino*, 331 F.3d at 78 (emphasis in original).

presence of probable cause negates a claim for abuse of criminal process.[74]

## V.     DISCUSSION

### A.     Section 1983 Claim

#### 1.     Pervasive Policy

Plaintiffs' allegations of racial profiling are not applicable to Mr. Jimenez's arrest.  Plaintiffs allege that the City has a "quota/productivity policy that encourages unlawful arrests" and that this policy "require[s] that individual members of the NYPD meet these quota/productivity goals in order to gain overtime and promotional opportunities within the NYPD."[75]  Plaintiffs discuss the alleged discriminatory culture and practices of the NYPD in detail, describing, as examples, the Clean Halls Building program, the stop and frisk program, marijuana arrests, and trespassing stops.[76]  Plaintiffs argue that this discriminatory culture leads members of the NYPD to target minorities to meet the quota and productivity goals.[77]  These allegations, however, are not applicable to this case.  Mr. Jimenez

---

[74]     *See Jones v. J.C. Penny's Dep't Stores*, 317 Fed. App'x 71, 74 (2d Cir. 2009); *Sforza v. City of New York*, No. 07 Civ. 6122, 2009 WL 857496, at *17 (S.D.N.Y. Mar. 31, 2009).

[75]     *See* Pl. Opp. at 12

[76]     *See* FAC ¶¶ 163, 165, 171–174.

[77]     *See* Pl. Opp. at 13.

16

was not stopped, searched, and then arrested. The facts, as plaintiffs allege them, state that the hospital employees who attended to Mrs. Jimenez brought Mr. Jimenez to the attention of the NYPD.[78] Therefore, he was not targeted for arrest because he was a minority, as it was the Hospital Defendants, and not the NYPD, that initially singled him out.

The narrower question here is whether the NYPD has a policy of continuing to pursue a subject once the detectives determine that there is no probable cause for arrest. None of plaintiffs' facts support this. Plaintiffs' claims rest on allegations of racial profiling and targeting that do not apply to Mr. Jimenez. The complaint does not allege any facts that would suggest that the NYPD has a persistent, widespread custom of fabricating evidence after a suspect has legitimately been brought to the NYPD's attention.

Plaintiffs argue that the quota and productivity policy encourages "unlawful stops, unlawful searches, false arrests, the fabrication of evidence, and perjury."[79] Plaintiffs allege that the policy does not differentiate between arrests that are supported by probable cause and those that are not, and that the NYPD "does nothing to ensure that officers . . . are making arrests and issuing summonses

---

[78]     *See* FAC ¶¶ 64–65.

[79]     *Id.* ¶ 182.

17

and desk appearance tickets lawfully."[80]  Plaintiffs then assert that this inaction

encourages false arrests and the fabrication of evidence and perjury.[81]  However,

plaintiffs offer no facts to support their claim that this alleged policy was in any

way connected to Mr. Jimenez's arrest.  Plaintiffs attempt to connect the facts

relating to abuse of the stop and frisk program to the alleged false arrest and

fabrication of evidence in this case.  However, without any facts to suggest that this

policy was the "moving force" behind Mr. Jimenez's arrest and prosecution, the

*Monell* claim fails.[82]

### 2. Similarly Situated

Mr. Jimenez argues that he was deprived of rights under the Equal

Protection Clause; however, he fails to make the appropriate comparison.

Plaintiffs cite facts and statistics related to the disparate impact various NYPD

policies, such as the stop and frisk policy, have on minorities.[83]  However, as

discussed above, Mr. Jimenez was not targeted by the NYPD under the stop and

frisk policy.  Instead, plaintiffs allege that the officers manufactured evidence after

---

[80]     *Id.* ¶ 189.

[81]     *See id.* ¶ 193.

[82]     *See Brown*, 520 U.S. at 404.

[83]     *See* FAC ¶ 164.

Mr. Jimenez was brought to the attention of the NYPD.[84]  Thus, to determine

whether Mr. Jimenez was treated differently than someone similarly situated, the

correct comparison is to other suspects who are brought to the attention of the

NYPD by a third party.  Plaintiffs offer no facts suggesting that officers fabricate

evidence for Latino suspects, but not for other suspects, when those suspects are

investigated after a third-party complaint.  Therefore, plaintiffs' Equal Protection

claim fails.

### B.  State Law Claims

#### 1.  Disclosure of Medical Records

Plaintiffs' negligence claim rests on the alleged wrongful disclosure

of medical records.[85]  Initially, plaintiffs claim that NYCHHC, Merritt, Cohen, and

the CyraCom agent "conspired together" to create false records for Mrs. Jimenez.[86]

This alleged conspiracy describes intentional conduct that cannot support a

---

[84]     *See id.* ¶¶ 89–90, 94, 98, 101.

[85]     Initially, plaintiffs brought negligence claims against all defendants on behalf of both Mrs. Jimenez and Mr. Jimenez.  However, plaintiffs are now pursuing their negligence claim only against NYCHHC, the Mount Sinai Defendants, CyraCom, Trowers, Merritt, and Cohen for disclosing Mrs. Jimenez's medical records.  *See* Pl. Opp. at 9–10.

[86]     FAC ¶ 62.

negligence claim.[87]  Plaintiffs further allege that these defendants provided members of the NYPD with medical records and other privileged information belonging to Mrs. Jimenez.[88]  To the extent that plaintiffs are alleging wrongful disclosure of privileged medical information, their claim fails with respect to certain defendants, but is plausible with respect to others.

*First*, with respect to CyraCom, plaintiffs have not alleged that CyraCom or the CyraCom agent took part in the disclosure of medical records. Instead, plaintiffs claim only that the CyraCom agent conspired to create false records.  Further, plaintiffs have not alleged any privileged relationship between the CyraCom agent and Mrs. Jimenez.  Because plaintiff alleges no facts that support a claim of wrongful disclosure of medical records against CyraCom, the negligence claim fails.

*Second*, the Mount Sinai Defendants were not in possession of any privileged information to disclose.  Ms. Cohen, as a volunteer with SAVI, did not provide medical or psychiatric care, and is not a licensed social worker.  To establish a claim for wrongful disclosure of medical records, the plaintiff must

---

[87]     *See Dunn*, 690 N.Y.S.2d at 81.

[88]     *See* FAC ¶¶ 65, 69, 71.

allege that there was a privileged relationship.[89]  Because there was no privileged

relationship between Ms. Cohen and Mrs. Jimenez, the negligence claim fails.

However, with regard to NYCHHC, Dr. Trowers, and Ms. Merritt,

plaintiffs have plausibly stated a claim.  Plaintiffs allege that "[u]pon information

and belief, while speaking with members of the NYPD, the Hospital Defendants

also provided members of the NYPD with, *inter alia*, medical records; personally

identifiable information; social worker records; and other protected and privileged

information belonging to Mr. and Mrs. Jimenez."[90]  Plaintiffs may plead facts

"upon information and belief where . . . the facts are peculiarly within the

possession and control of the defendant . . . ."[91]  The facts relating to this alleged

disclosure are within the possession and control of the defendants, thus pleading

upon information and belief is appropriate in this case.  Taken as true, this

allegation states a plausible claim for wrongful disclosure of medical information.

Finally, plaintiffs do not plead any facts that would support a claim

for negligent retention or supervision.  They allege merely that the defendants

---

[89]     *See, e.g.*, *MacDonald v. Clinger*, 446 N.Y.S.2d 801 (4th Dep't 1982)
(wrongful disclosure by psychiatrist); *Doe v. Roe*, 400 N.Y.S.2d 668 (1977)
(same); *Tighe v. Ginsberg*, 540 N.Y.S.2d 99 (4th Dep't 1989) (wrongful disclosure
by physician).

[90]     FAC ¶ 65.

[91]     *Arista Records*, 604 F.3d at 120.

"knew or should have known of the individual defendants' propensity for the conduct alleged" and that "[d]espite that knowledge, defendants . . . retained the individual defendants as employees."[92]  However, these statements are merely a "[t]hreadbare recital[] of the elements of a cause of action," and do not allege any facts that would make a claim of negligent retention and supervision plausible.[93] Thus, plaintiffs' claim of negligent retention and supervision fails.

## 2.    **Collateral Objective**

Plaintiffs argue that Quilty and his partner's objective in arresting Mr. Jimenez was not his arrest, but rather "to protect their own financial interests, to increase their productivity ratings, to have Mr. Jimenez deported, and to cover up their intolerance towards persons they believe are immigrants in this country."[94] An arrest based on intolerance or a desire to deport a suspect does not satisfy the collateral objective element for an abuse of process claim—this is merely an improper motive, and not a collateral purpose.[95]  However, the allegations that Detective Quilty and his partner continued to pursue Mr. Jimenez's arrest and

---

[92]    *Id.* ¶¶ 131–132.

[93]    *See Iqbal*, 556 U.S. at 678.

[94]    FAC ¶ 144.

[95]    *See Savino*, 331 F.3d at 77.

prosecution to increase their productivity ratings and protect their financial interests suggest something more than an improper or malicious motive. Instead, these objectives form a collateral purpose beyond the criminal prosecution of Mr. Jimenez.[96] Plaintiff has pleaded facts which, if true, could establish that Detective Quilty and his partner used the criminal process to achieve an improper and ulterior purpose. Therefore, the City Defendants' motion is denied with respect to the abuse of process claim.

### C. Leave to Replead

Leave to replead is typically granted unless amendment would be futile. Here, the wrongful disclosure of medical information claim against both CyraCom and the Mount Sinai Defendants fails because no privileged relationship exists. Therefore amendment would be futile and these claims are dismissed with prejudice. Plaintiffs' *Monell* and Equal Protection claims are also dismissed with prejudice, because the alleged policies are unrelated and there is no possibility of alleging facts that would support an Equal Protection claim in this case. Leave to replead is granted with regard to the negligent retention and supervision claim, as plaintiffs may be able to plead additional facts to support the claim. Plaintiffs may amend their complaint to allege this claim if they can do so consistent with their

---

[96] *See id.* at 77–78.

obligations under Rule 11 of the Federal Rules of Civil Procedure within twenty (20) days of the date of this Order.

## VI. CONCLUSION

For the foregoing reasons, the Mount Sinai and CyraCom Defendants' motions are GRANTED. The City Defendants' motion is GRANTED with respect to the *Monell*, Equal Protection, and negligent supervision and retention claims, and DENIED with respect to the negligence and abuse of process claim. The Clerk of the Court is directed to close these motions (Docket Nos. 45, 50, 53). A conference is scheduled for October 29, 2014 at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:    New York, New York
          October 9, 2014

24

**Counsel for Plaintiffs:**

Gregory Paul Mouton, Jr., Esq.
The Law Office of Gregory P. Mouton, Jr.
305 Broadway, 14th Floor
New York, NY 10007
(646) 706-7481

**Counsel for Mount Sinai Defendants:**

Thomas A. Catalano, Esq.
Lester Schwab Katz & Dwyer, LLP
100 Wall Street
New York, NY 10005
(212) 964-6611

**Counsel for CyraCom, Inc.:**

Mercedes Colwin, Esq.
Kuuku Minnah-Donkoh, Esq.
Vincent M. Avery, Esq.
Gorden & Rees, LLP
90 Broad Street, 23rd Floor
New York, NY 10004
(212) 269-5500

**Counsel for City Defendants:**

Tobias Eli Zimmerman
Assistant Corporation Counsel
City of New York Law Department
100 Church Street
New York, NY 10007
(212) 356-2661