UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

PATRICIO JIMENEZ,

        **Plaintiff,**

        - against -

THE CITY OF NEW YORK, DETECTIVE
JAMES QUILTY, DETECTIVE MIGUEL
LOPEZ, and JOHN/JANE DOE #1,

        **Defendants.**

-------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/24/15

**OPINION AND ORDER**

**14-cv-2994 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

Patricio Jimenez brings this suit against the City of New York,

Detectives James Quilty and Miguel Lopez, and an unnamed defendant John/Jane

Doe #1 under section 1983 of Title 42 of the United States Code ("Section 1983"),

alleging false arrest, denial of substantive due process, malicious abuse of process,

malicious prosecution, and failure to intervene. Defendants now move for

summary judgment on all claims asserted against them, primarily on the grounds

that probable cause existed for Mr. Jimenez's arrest. For the reasons set forth

below, defendants' motion is GRANTED.

-1-

## II. BACKGROUND

### A. Undisputed Facts

In the early morning hours of December 26, 2012, plaintiff's wife Maribel Jimenez was taken to Harlem Hospital by ambulance.[1] Staff at Harlem Hospital called the police,[2] and Officer Matthew Weinbel responded.[3] Officer Weinbel generated a Domestic Incident Report and a Complaint Report indicating that Mrs. Jimenez was the victim of a domestic assault by her husband.[4] On December 27, 2012, Detective Quilty was assigned to investigate the alleged assault.[5]

On January 21, 2013, Detective Quilty met with Mrs. Jimenez at her home, accompanied by Detective Lopez.[6] Detective Quilty completed a Complaint Follow Up Informational Report ("DD5") after that interview.[7] The DD5

---

[1] *See* Defendants' Statement of Undisputed Material Facts Pursuant to Rule 56.1 ("Def. 56.1") ¶ 1.

[2] *See id.* ¶ 2.

[3] *See* Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 25.

[4] *See id.* ¶¶ 26-27.

[5] *See* Def. 56.1 ¶ 4.

[6] *See id.* ¶ 5.

[7] *See* Pl. 56.1 ¶ 10.

contained details of the alleged assault, which Detective Quilty indicated were

recounted to him by Mrs. Jimenez.[8]

On January 30, 2013, Mrs. Jimenez appeared at the police precinct

with her husband.  At the precinct, Mrs. Jimenez told Detective Quilty that her

husband had not assaulted her.[9]  Detective Quilty then placed Mr. Jimenez under

arrest.  Detective Quilty signed a Criminal Court Complaint against Mr. Jimenez

that same day, and Mr. Jimenez was arraigned in New York County Criminal

Court on January 31, 2013.[10]  On March 7, 2013, the criminal case against Mr.

Jimenez was dismissed on motion of the District Attorney for lack of evidence

sufficient to prove the case beyond a reasonable doubt.[11]

### B.    Disputed Facts

Defendants claim that Mrs. Jimenez told several individuals —

including the defendant Detectives — that her husband assaulted her, that she

recanted her story before her husband's arrest, and that she maintains her

recantation to this day.  Plaintiff claims that Mrs. Jimenez never told anyone that

---

[8]      *See id.* ¶ 80.

[9]      *See* Defendants' Reply to Plaintiff's Statement of Undisputed Material
Facts Pursuant to Local Rule 56.1 ("Def. 56.1 Reply") ¶ 60.

[10]      *See* Pl. 56.1 ¶¶ 66-67.

[11]      *See id.* ¶¶ 71-72.

her husband assaulted her, and that the defendants (in concert with others) fabricated the evidence which led to Mr. Jimenez's alleged false arrest and related claims. Because the parties maintain such disparate accounts of the same events, they are presented as separate narratives below.

### 1.    Defendants' Version

After being assigned to investigate the allegation of assault set forth in the Domestic Incident Report and Complaint Report prepared by Officer Weinbel, Detectives Quilty and Lopez met with Mrs. Jimenez on January 21, 2013 at her home.[12] Detective Lopez served as a translator — Mrs. Jimenez spoke only Spanish.[13] During this interview, Mrs. Jimenez confirmed that she had been assaulted by her husband on December 26, 2012.[14] She provided specific details about the assault: Mr. Jimenez came home drunk, went into the bathroom and struck Mrs. Jimenez in the face with approximately three open hand slaps, then twisted her right arm behind her back, causing her substantial pain.[15]

This was the only time Detective Quilty interviewed Mrs. Jimenez

---

[12]    *See* Def. 56.1 ¶ 5.

[13]    *See id.* ¶ 6.

[14]    *See id.* ¶ 8.

[15]    *See id.* ¶ 11.

between December 26, 2012, and January 30, 2013.[16]  Detective Quilty concluded

he had probable cause to arrest Mr. Jimenez, and he told Mrs. Jimenez that her

husband should turn himself in at the police precinct.[17]

On January 30, 2013, the plaintiff and his wife appeared at the police

precinct.[18]  Detective Quilty was present; Detective Lopez was not (and indeed

retired from the New York City Police Department ("NYPD") the next day).[19]

Mrs. Jimenez then changed her story, and told Detective Quilty that she had not

been assaulted by her husband after all, but had fallen in the bathroom due to

dizziness caused by untreated diabetes.[20]  Detective Quilty proceeded to arrest Mr.

Jimenez.

## 2.    Plaintiff's Version[21]

In the early morning of December 26, 2012, Mrs. Jimenez became

---

[16]    *See* Def. 56.1 Reply ¶ 31.

[17]    *See* Def. 56.1 ¶¶ 12-13.

[18]    *See id.* ¶ 14.

[19]    *See id.* ¶¶ 15, 19.

[20]    *See* Def. 56.1 Reply ¶ 62.

[21]    The only source of evidence for most of plaintiff's disputed facts is an affidavit by Mrs. Jimenez filed in opposition to this motion, which the defendants characterize as an extension of Mrs. Jimenez's recantation on January 30, 2013. *See* 8/20/15 Affidavit of Maribel Gonzalez-Mosso Jimenez in Opposition to Defendant's Motion for Summary Judgment ("Maribel Aff").

dizzy and fell in the bathroom of her home.[22]  Her daughter Marian called 911 and requested an ambulance, which took Mrs. Jimenez to Harlem Hospital.[23]  No police officer spoke to Mrs. Jimenez while she was hospitalized.[24]

Approximately two weeks later, Detectives Quilty and Lopez came to the Jimenez home.[25]  Mr. Jimenez was at work, and Marian translated the conversation between Mrs. Jimenez and the detectives.[26]  Detective Quilty told Mrs. Jimenez that they were looking for her husband "because he had hit her."[27]  Mrs. Jimenez told the detectives that Mr. Jimenez had not hit her, and that she had fallen due to a diabetic episode.[28]  Detective Lopez did not speak to Mrs. Jimenez during this visit.[29]

Approximately one week later, Detectives Quilty and Lopez returned

---

[22]     *See* Pl. 56.1 ¶ 23.

[23]     *See id.* ¶ 24.

[24]     *See id.* ¶ 30.

[25]     *See id.* ¶ 31.

[26]     *See id.* ¶¶ 32-33.

[27]     *Id.* ¶ 34.

[28]     *See id.* ¶ 35.

[29]     *See id.* ¶ 41.

to the Jimenez home.[30]  Marian Jimenez again translated the conversation between the Detectives and Mrs. Jimenez.[31]  Detective Quilty again accused Mr. Jimenez of assaulting Mrs. Jimenez; Mrs. Jimenez again denied being assaulted.[32]  Detective Lopez told Mrs. Jimenez, in Spanish, that the police had proof that Mr. Jimenez had assaulted her — but that if he had not, he should still appear at the police precinct for a few hours of questioning, after which time he would be released.[33]

Mrs. Jimenez informed Mr. Jimenez of the detectives' visit later that evening, and on January 30, 2013 the two appeared at the police precinct.[34]  Mrs. Jimenez told Detective Quilty — for the third time — that her husband had never assaulted her.[35]  Detective Quilty then arrested Mr. Jimenez.

---

[30]     *See id.* ¶ 42.

[31]     *See id.* ¶ 46.

[32]     *See id.* ¶¶ 47-48.

[33]     *See id.* ¶¶ 51-52.

[34]     *See id.* ¶¶ 56, 60.

[35]     *See id.* ¶ 62.

## C. Other Documentary Evidence[36]

### 1. The Ambulance Report

The emergency medical technician who transported Mrs. Jimenez to

Harlem Hospital on December 26, 2012 completed a standard FDNY Prehospital

---

[36] On June 16, 2015, plaintiff sought reconsideration of the Court's June 2, 2015 Order permitting defendants to utilize certain documents, including the ambulance report, hospital records, domestic abuse counselor report, and affidavit of Hannah Cohen described in this section, in their opposition to this motion. For the following reasons, plaintiff's motion to reconsider is denied.

*First*, while these sealed documents are referenced in this Opinion, I would reach the same conclusion without them (as described in further detail below at footnote 91). A subsequent decision by another court finding that the sealed records (not including the Cohen affidavit) were wrongfully obtained and should not have been used will not disturb my judgment and order here. *See* Plaintiff's Memorandum of Law in Support of Motion to Reconsider ("Pl. 6/16/15 Mem.") at 6-7.

*Second*, plaintiff's argument that Mrs. Jimenez will be collaterally estopped from litigating both whether the sealed documents were wrongfully obtained and whether the documents are sufficiently trustworthy to be admissible in evidence in another forum is without merit. Mrs. Jimenez is not a party in this action. A nonparty may be barred by collateral estoppel where she was "represented by a party to the prior proceeding, or exercised *some degree of actual control* over the presentation on behalf of a party to that proceeding." *Stichting Ter Behartiging Van de Belangen Van Oudaandeelhouders In Het Kapitaal Van Saybolt Int'l B.V. v. Schreiber*, 327 F.3d 173, 185 (2d Cir. 2003) (emphasis added). Mrs. Jimenez is not represented by a fiduciary or agent in this litigation, and plaintiff does not submit that Mrs. Jimenez is in privity with, or exercising any form of control over, him in this case. Plaintiff's argument that Mrs. Jimenez's testimony has "shaped the very path of litigation" in this case may well be true. Pl. 6/16/15 Mem. at 8. However, the fact that Mrs. Jimenez's testimony is central to the case does not demonstrate that she is exercising any control over the presentation of her husband's case. Thus, Mrs. Jimenez will not be collaterally estopped from litigating issues related to these documents in future proceedings.

Care Report (the "Ambulance Report") that same day.[37]  In the report, the

technician noted specific details of an alleged assault:  "her husband was drinking .

. . goes up to her [and] puts her arms behind her back and smacks her multiple

times."[38]  The technician listed the presumptive diagnosis as "Poss. Domestic

Violence."[39]

### 2.    The Hospital Records

The Harlem Hospital Emergency Department triage records created

upon Mrs. Jimenez's arrival at Harlem Hospital note that "patient was in

altercation with her domestic partner and now complains of right shoulder,

forearm, and wrist pain."[40]

### 3.    Hannah Cohen's Affidavit

Hannah Cohen, a volunteer advocate with the Mt. Sinai Sexual

Assault and Violence Intervention Program, met with Mrs. Jimenez at Harlem

Hospital on the night she was hospitalized.  Cohen has submitted an affidavit in

---

[37]    *See* FDNY Prehospital Care Report, Ex. M to 8/25/15 Declaration of Tobias E. Zimmerman in Support of Defendants' Motion for Summary Judgment, at 1.

[38]    *Id.* at 2.

[39]    *Id.*

[40]    Harlem Hospital Center Triage Note, Ex. D to 6/20/14 Declaration of Thomas Catalano in Support of Motion to Dismiss ("Catalano Aff."), at 3.

which she attests to a "specific recollection of speaking with Mrs. Jimenez through a Spanish interpreter."[41]  Cohen testified that "Mrs. Jimenez informed me, in no uncertain terms, that she was assaulted by her domestic partner, Mr. Jimenez."[42]

### 4.    Cohen's Advocate Report Form

The defendants have also produced Cohen's Advocate Report Form, which she testified was written entirely by her.[43]  In this report, completed on December 26, 2012, Cohen wrote "Boyfriend came home after drinking.  He pulled her hair and she fought back to defend herself.  He twisted her arm back. One of her three daughters found her in the bathroom and called 911."[44]

## III.    LEGAL STANDARD

Summary judgment is appropriate "only where, construing all the evidence in the light most favorable to the non-movant and drawing all reasonable inferences in that party's favor, there is 'no genuine issue as to any material fact

---

[41]    6/20/14 Declaration of Hannah Cohen in Support of Motion to Dismiss ¶ 6.

[42]    *Id.* ¶ 11.  I note that even if another court determines that the hospital records, including the Advocate Report Form discussed in Cohen's affidavit, were wrongfully disclosed, this wrongful disclosure cannot apply to the affidavit itself, which is based on Cohen's "specific recollection" of her conversation with Mrs. Jimenez.  *Id.* ¶ 6.

[43]    *Id.* ¶ 5

[44]    Advocate Report Form, Ex. C to Catalano Aff., at 3.

and . . . the movant is entitled to judgment as a matter of law.'"[45]  "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[46]

"[T]he moving party has the burden of showing that no genuine issue of material fact exists and that the undisputed facts entitle [that party] to judgment as a matter of law."[47]  To defeat a motion for summary judgment, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts," and "may not rely on conclusory allegations or unsubstantiated speculation."[48]

In deciding a motion for summary judgment, "[t]he role of the court is not to resolve disputed issues of fact but to assess whether there are any factual

---

[45]     *Rivera v. Rochester Genesee Reg'l Transp. Auth.*, 743 F.3d 11, 19 (2d Cir. 2014) (quoting Fed. R. Civ. P. 56(c)) (some quotation marks omitted).

[46]     *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotations and alterations omitted).

[47]     *Coollick v. Hughes*, 699 F.3d 211, 219 (2d Cir. 2012) (citations omitted).

[48]     *Brown v. Eli Lilly & Co.,* 654 F.3d 347, 358 (2d Cir. 2011) (quotation marks and citations omitted).

issues to be tried."[49] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[50]  A party may not rely upon implausible or fantastic testimony to generate a triable issue of fact.[51]  Such testimony may be disregarded by the Court.[52]

## IV.  APPLICABLE LAW

### A.    Section 1983

Section 1983 states in relevant part that

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "does not create a federal right or benefit; it simply provides a

---

[49]     *Cuff ex rel. B.C. v. Valley Cent. Sch. Dist.*, 677 F.3d 109, 119 (2d Cir. 2012).

[50]     *Barrows v. Seneca Foods Corp.*, 512 Fed. App'x 115, 117 (2d Cir. 2013) (quoting *Redd v. New York Div. of Parole*, 678 F.3d 166, 174 (2d Cir. 2012)).

[51]     *See Jeffreys v. Rossi*, 275 F. Supp. 2d 463, 477 (S.D.N.Y. 2003), *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005).

[52]     *See id*. at 466.

mechanism for enforcing a right or benefit established elsewhere."[53]  "The purpose

of [section] 1983 is to deter state actors from using the badge of their authority to

deprive individuals of their federally guaranteed rights and to provide relief to

victims if such deterrence fails."[54]  In order to have recourse against a municipality

under section 1983, a plaintiff "must prove that 'action pursuant to official

municipal policy' caused the alleged constitutional injury."[55]  Any form of liability

under section 1983 requires direct involvement by the defendant in causing the

plaintiff's damages.[56]  "Because vicarious liability is inapplicable to . . . [section]

1983 suits, a plaintiff must [prove] that each Government-official defendant,

through the official's own individual actions, has violated the Constitution."[57]

### B.     False Arrest and Probable Cause

Section 1983 claims for false arrest and illegal search and seizure arise

---

[53]     *Morris–Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*,
423 F.3d 153, 158-59 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808,
816 (1985)).  *Accord Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("'[O]ne
cannot go into court and claim a violation of § 1983 — for § 1983 by itself does
not protect anyone against anything.'") (quoting *Chapman v. Houston Welfare
Rights Org.*, 441 U.S. 600, 617 (1979)).

[54]     *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[55]     *Cash v. County of Erie*, 654 F.3d 324, 333 (2d Cir. 2011) (quoting
*Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011)).

[56]     *See Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009).

[57]     *Id.* (citations omitted).

under the Fourth Amendment and are identical to claims for false arrest and illegal search and seizure under New York law.[58]  To establish false arrest, a plaintiff must show (among other factors) that "the plaintiff did not consent to the confinement" and that "'the confinement was not otherwise privileged.'"[59]

"The existence of probable cause to arrest constitutes a 'complete defense' to an action for false arrest, whether the action is brought under Section 1983 or state law."[60]  A victim's report of a crime is generally sufficient to establish probable cause for arrest;[61] however, "'[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest.'"[62]

---

[58]    *See Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006); *see also Jenkins v. City of New York*, 478 F.3d 76, 84–85 (2d Cir. 2007).

[59]    *Ackerson v. City of White Plains*, 702 F.3d 15, 19 (2d Cir. 2012) (quoting *Broughton v. State of New York*, 37 N.Y.2d 451, 456 (1975)).  *Accord Edwards v. Pretsch*, 180 F. Supp. 2d 489, 507 (S.D.N.Y. 2012) (noting that for Section 1983 purposes, false arrest is synonymous with unlawful detention).

[60]    *Matthews v. City of New York*, 889 F. Supp. 2d 418, 433 (E.D.N.Y. 2012) (citing *Amore v. Novarro*, 624 F.3d 522, 536 (2d Cir. 2010)).

[61]    *See Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006); *see also Wahab v. City of New York*, 386 F. Supp. 2d 277, 287 (S.D.N.Y. 2005) ("[p]robable cause will generally be found to exist when an officer is advised of a crime by a victim or an eyewitness.").

[62]    *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)).

### C. Denial of Substantive Due Process Through Fabrication of Evidence

To prevail on a fabrication of evidence claim, a plaintiff must prove that "an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."[63]

### D. Malicious Prosecution

In order to prevail on a claim for malicious prosecution under section 1983, a plaintiff must prove the elements of malicious prosecution under state law.[64] The elements of a malicious prosecution claim under New York law are: (1) the commencement or continuation of a criminal proceeding, (2) the favorable termination of that proceeding, (3) lack of probable cause, and (4) malice.[65] Probable cause defeats a claim of malicious prosecution.[66] The probable cause standard for malicious prosecution is slightly higher than the standard required for arrest, and has been described as "facts and circumstances as would lead a

---

[63]     *Jovanovic v. City of New York*, 486 Fed. App'x 149, 152 (2d Cir. 2012) (citing *Jocks v. Tavernier*, 316 F.3d 128, 138 (2d Cir. 2003) and *Ricciuti v. New York City Transit Auth.*, 124 F.3d 123,130 (2d Cir. 1997)).

[64]     *See Fulton v. Robinson*, 289 F.3d 188, 195 (2d Cir. 2002).

[65]     *See Swartz v. Insogna*, 704 F.3d 105, 111–12 (2d Cir. 2013).

[66]     *See Dickerson v. Napolitano*, 604 F.3d 732, 751 (2d Cir. 2010).

reasonably prudent person to believe the plaintiff guilty."[67]

"In malicious prosecution cases brought against police officers, plaintiffs have demonstrated that officers initiated criminal proceedings by having the plaintiff arraigned, by filling out complaining and corroborating affidavits, and by signing felony complaints."[68]  Further, "[a]lthough there is a presumption that a prosecutor exercises independent judgement in deciding whether to initiate and continue a criminal proceeding, an arresting officer may be held liable for malicious prosecution 'when a police officer creates false information likely to influence a jury's decision and forwards that information to prosecutors.'"[69]

For a proceeding to be favorably terminated, it need not result in an acquittal, although that is sufficient.[70]  When a termination is inconclusive because it does not address the merits of the charge, the facts of the surrounding termination must be examined to determine "whether the failure to proceed implies

---

[67]     *Boyd v. City of New York*, 336 F.3d 72, 76 (2d Cir. 2003).

[68]     *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 227 (S.D.N.Y. 2006). *Accord Cox v. County of Suffolk*, 827 F. Supp. 935, 938 (E.D.N.Y. 1993) (holding that police officer initiated prosecution against defendant when he swore and subscribed to a felony complaint).

[69]     *Mitchell*, 434 F. Supp. 2d at 227 (quoting *Brome v. City of New York*, No. 02 Civ. 7184, 2004 WL 502645, at *5-6 (S.D.N.Y. Mar. 15, 2004)).

[70]     *See Jovanovic v. City of New York*, No. 04 Civ 8437, 2006 WL 2411541, at *10 (S.D.N.Y. Aug. 17, 2006).

a lack of reasonable grounds for the prosecution."[71]  "A 'formal abandonment of the proceedings by the public prosecutor' constitutes favorable termination."[72]

Finally, malice "does not have to be actual spite or hatred, but means only 'that the defendant must have commenced the criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served.'"[73]  "A lack of probable cause generally creates an inference of malice."[74]

### E.    Malicious Abuse of Process

"'In its broadest sense, abuse of process may be defined as misuse or perversion of regularly issued legal process for a purpose not justified by the nature of the process.'"[75]  "In New York, 'a malicious abuse-of-process claim lies against a defendant who (1) employs regularly issued legal process to compel performance or forbearance of some act (2) with intent to do harm without excuse of

---

[71]    *Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir. 1989).

[72]    *Lawson v. N.Y. Billiards Corp.*, 331 F. Supp. 2d 121, 131 (E.D.N.Y. 2004) (quoting *Smith-Hunter v. Harvey*, 95 N.Y.2d 191, 198 (2000)).

[73]    *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) (quoting *Nardelli v. Stamberg*, 44 N.Y.2d 500, 502-03 (1978)).

[74]    *Boyd*, 336 F.3d at 78.

[75]    *Sipsas v. Vaz,* 855 N.Y.S. 2d 248, 249 (2d Dep't 2008) (quoting *Board of Ed. of Farmingdale Union Free School Dist. v. Farmingdale Classroom Teachers Ass'n*, *Local 1889*, 38 N.Y. 2d 397, 400 (1975)).

justification, and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process.'"[76]

## F.    Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."[77]  "Liability only attaches if (1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."[78]

## V.    DISCUSSION

### A.    False Arrest

At the heart of this case is the plaintiff's claim that Detective Quilty lacked probable cause to arrest Mr. Jimenez on January 30, 2013.  Defendants argue that because a statement from an alleged assault victim is sufficient to

---

[76]    *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003) (quoting *Cook v. Sheldon*, 41 F.3d 73, 80 (2d Cir. 1994)).

[77]    *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994).

[78]    *Tavares v. City of New York*, No. 08 Civ. 3782, 2010 WL 234974, at *4 (S.D.N.Y. Jan. 19, 2010) (internal quotation marks and citation omitted).

establish probable cause (absent circumstances raising doubt as to the victim's veracity) Detective Quilty's January 21, 2013 interview with Mrs. Jimenez, during which she reported being assaulted by her husband, created probable cause for Mr. Jimenez's arrest.

Mrs. Jimenez claims she never told anyone — paramedic, hospital staff, domestic abuse counselor, or police officer — that her husband assaulted her. Indeed, she has submitted an affidavit in which she claims that the January 21 interview described by Detective Quilty never took place at all.[79]  Mrs. Jimenez instead claims that she was the target of extensive efforts on the part of Detective Quilty to investigate an assault that never happened, and that her husband is the victim of Detective Quilty's apparent inability to take "no" for an answer.

Mrs. Jimenez's affidavit is the only document in the record raising a question as to the existence of probable cause.[80]  Defendants urge this Court to

---

[79]    *See* Maribel Aff. ¶¶ 21-28.

[80]    While Mr. Jimenez has also submitted an affidavit in which he denies assaulting his wife, he "has little, if any, testimony to provide about the substance of Mrs. Jimenez's discussions and interactions and conversations with the Defendants and the 'corroborating' witnesses as he was not present during said interactions and conversations." Pl. 6/16/15 Mem. at 9.  He is therefore incapable of challenging the existence of probable cause for his arrest, as that probable cause is based solely on those conversations.

apply the same reasoning I applied in *Jeffreys v. Rossi*[81] to find that Mrs. Jimenez's affidavit is patently unbelievable (and therefore must be disregarded) in light of other documents corroborating her alleged prior statements, and in light of the known unreliability of recantations by victims in domestic violence disputes.[82]  In *Jeffreys*, this Court held that while courts should not assess credibility on summary judgment, "when evidence is so contradictory and fanciful that it cannot be believed by a reasonable person, it may be disregarded."[83]  This is a high bar; however, the record here reveals that this case reaches the *Jeffreys* threshold.

The plaintiff in *Jeffreys* (a prisoner suing his arresting officer and other defendants for use of excessive force)[84] claimed that a group of police officers viciously beat him until he blacked out.[85]  He was then thrown from a third story schoolhouse window (also by the police).[86]  Hospital records indicated not

---

[81]     275 F. Supp. 2d 463 (S.D.N.Y. 2003) *aff'd sub nom. Jeffreys v. City of New York*, 426 F.3d 549 (2d Cir. 2005).

[82]     *See* Defendants' Reply in Support of Motion for Summary Judgment at 2-3 (citing academic articles and federal case law discussing the high incidence of recantation by victims in domestic violence cases).

[83]     *Jeffreys*, 275 F. Supp. 2d at 476.

[84]     *See id.* at 465.

[85]     *See id.* at 466-68.

[86]     *See id.* at 467.

only that Jeffreys lacked any wounds corresponding to the brutal beating he described,[87] but that he told hospital staff he jumped from the schoolhouse window in an attempt to escape from the police, who were pursuing him on a suspected burglary charge.[88] Jeffreys' account was so absurd, and so contradicted by the record, that I disregarded it in granting the defendants summary judgment.[89]

Here, as in *Jeffreys*, a witness is testifying to a version of events that is contrary to that presented by all other witnesses. Here, as there, an array of contemporaneous statements and documents make the testimony of Mrs. Jimenez plainly incredible. To take Mrs. Jimenez's statements as true, this Court would need to accept that the ambulance driver, the emergency room staff, the volunteer domestic violence advocate, and no fewer than three police officers all acted in concert, and without any apparent motive, to fabricate several official documents each telling essentially the same story — the story which is reflected in Detective Quilty's DD5, authored following the January 21 interview of Mrs. Jimenez. This alleged conspiracy, the existence of which is supported solely by Mrs. Jimenez's affidavit, is simply too fantastic to be credible.

---

[87]     *See id.* at 469-70.

[88]     *See id.* at 469.

[89]     *See id.* at 476.

To be clear, this Court's decision to disregard Mrs. Jimenez's affidavit is not based on defendants' argument that recantations by domestic violence victims are intrinsically untrustworthy. On the other hand, the Second Circuit has admonished judges to view recantations from victims of domestic violence "'with the utmost suspicion.'"[90] Here, that suspicion is more than justified. Mrs. Jimenez's allegation of a sweeping conspiracy with no plausible motive by any of the participants, combined with the contemporaneous documentary evidence, renders Mrs. Jimenez's current statement too fanciful to be believed.[91]

Mrs. Jimenez may decline to testify in order to prevent her husband from being prosecuted for domestic assault, but it is galling to then use that recantation as a predicate to sue the City for false arrest and related claims. Litigation is not a sport; litigation is not a lottery. The City of New York should not be required to expend the time of its Corporation Counsel and the resources of its taxpayers defending against claims predicated on patently unbelievable

---

[90] *United States v. Carthen*, 681 F.3d 94, 103 (2d Cir. 2012) (quoting *Haouari v. United States*, 510 F.3d 350, 353 (2d Cir. 2007)).

[91] I would reach the same outcome without referencing the hospital records and Cohen's form and affidavit. Even without these documents, plaintiff must still assert that Officer Weinbel and Detectives Quilty and Lopez conspired, months apart and without any ascertainable motive, to fabricate an assault charge and pin it on Mr. Jimenez. This is just as patently unbelievable as a conspiracy that also included hospital staff and a domestic violence counselor.

testimony.  The likelihood that both Mr. and Mrs. Jimenez have committed perjury is high.

Plaintiff has produced no other evidence that raises a genuine issue of material fact as to whether Detective Quilty had probable cause to arrest him on January 30, 2013.  Detective Quilty was entitled to rely on Mrs. Jimenez's January 21 statement where she stated that she was assaulted by her husband.  Her recantation at the police station immediately prior to her husband's arrest does not undermine this probable cause.  Because Detective Quilty had probable cause to arrest Mr. Jimenez, plaintiff's claim for false arrest must fail, and summary judgment is appropriate.

### B.    Remaining Claims

The plaintiff has produced no evidence other than Mrs. Jimenez's affidavit suggesting Detective Quilty's interview notes from January 21, 2013 are anything less than accurate.  There is no factual issue, therefore, as to whether Detective Quilty fabricated these interview notes, and plaintiff's claim for denial of substantive due process must fail.  Because probable cause existed for Mr. Jimenez's arrest, his claims for malicious prosecution, malicious abuse of process, and failure to intervene must all fail as well.  Summary judgment is therefore appropriate as to all remaining claims.

## VI. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is GRANTED, and this case is dismissed with prejudice. TheClerk of the Court is directed to close these motion (Dkt. No. 93 and 106) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            September 24, 2015

**-Appearances-**

**For Plaintiff:**

Gregory P. Mouton, Jr., Esq.
The Law Office of Gregory P. Mouton, Jr.
305 Broadway, 14th Floor
New York, NY 10007
(646) 706-7481

**For Defendants:**

Tobias E. Zimmerman
Assistant Corporation Counsel
City of New York Law Department
100 Church Street
New York, NY 10007
(212) 356-2661