UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIO JIMENEZ,

                              Plaintiff,

            - against -

THE CITY OF NEW YORK, DETECTIVE
JAMES QUILTY, DETECTIVE MIGUEL
LOPEZ, and JOHN/JANE DOE #1,

                              Defendants.

No. 14 Civ. 2994 (SAS)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND SANCTIONS

**ZACHARY W. CARTER**
Corporation Counsel of the City of New York
*Attorney for Defendants City of New York, Quilty and Lopez*
100 Church Street
New York, New York 10007

By:   Tobias E. Zimmerman
       *Assistant Corporation Counsel*
       Special Federal Litigation Division
       (212) 356-2661

       Matter No. 2014-015603

Dated October 9, 2015

# TABLE OF CONTENTS

**Page**

**TABLE OF AUTHORITIES** ................................................................................................ ii

**INTRODUCTION** ................................................................................................................ 1

**ARGUMENT** ........................................................................................................................ 2

      POINT I    DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES UNDER 42 U.S.C. § 1988 ........................................................................ 2

      POINT II   THE COURT SHOULD AWARD SANCTIONS UNDER RULE 56(h), 28 U.S.C. § 1927, AND/OR ITS INHERENT POWERS TO SUPERVISE AND CONTROL ITS OWN PROCEEDINGS ........................................................................................ 4

**DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES** ........................................... 13

**CONCLUSION** .................................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

Abeyta v. City of New York,
 588 Fed. App'x 24 (2d Cir. Dec. 15, 2014) .................................................................. 3

Abeyta v. City of New York, No. 12 Civ. 5623 (KBF),
 2014 U.S. Dist. LEXIS 33766 (S.D.N.Y. March 7, 2014) ............................................ 3

Agee v. Paramount Comm.,
 114 F. 3d 395 (2d Cir. 1997) ......................................................................................... 5

Baasch v. Reyer,
 846 F. Supp. 9 (E.D.N.Y. 1994) ................................................................................... 4

Carrion v. City of New York, No. 01 Civ. 2255 (NT),
 2003 U.S. Dist. LEXIS 19909 (S.D.N.Y. 2003) ........................................................... 4

Carrion v. Yeshiva Univ.,
 535 F.2d 722 (2d Cir. 1976) ......................................................................................... 4

Christiansburg Garment Co. v. EEOC,
 434 U.S. 412 (1978) ...................................................................................................... 2

Cruz v. Savage,
 896 F.2d 626 (1st Cir. 1990) ........................................................................................ 9

Davidson v. Parshall,
 740 F.2d 129 (2d Cir. 1984) ..................................................................................... 2, 4

Delancett v. Village of Saranac Lake,
 986 F. Supp. 126 (S.D.N.Y. 1997) ............................................................................... 4

Enmon v. Prospect Capital Corp.,
 675 F.3d 138 (2d Cir. 2012) ......................................................................................... 5

F.D. Rich Co. v. United States ex rel. Indus. Lumber Co.,
 417 U.S. 116 (1974) ...................................................................................................... 5

Fox v. Vice,
 536 U.S. ___, 131 S.Ct. 2205 (2011) ....................................................................... 2, 4

Gallop v. Cheney,
 660 F.3d 580 (2d Cir. 2011) ....................................................................................... 10

# TABLE OF AUTHORITIES
**(cont.)**

**Page(s)**

General Camera Corp. v. Urban Development Corp.,
   734 F.2d 468 (1984) ............................................................................................................. 3

Hughes v. Rowe,
   449 U.S. 5 (1980) ................................................................................................................. 4

Jaisan, Inc. v. Sullivan,
   178 F.R.D. 412 (S.D.N.Y. 1997) ......................................................................................... 6

Kane v. City of New York,
   468 F. Supp. 586 (S.D.N.Y. 1979) ...................................................................................... 4

Kappenberger v. Oates,
   663 F. Supp. 991 (S.D.N.Y. 1987) ...................................................................................... 4

Luscier v. Risinger Bros. Transfer, No. 13 Civ. 8553 (PKC),
   2015 U.S. Dist. LEXIS 129640 (S.D.N.Y. Sept. 17, 2015) ............................................ 6, 12

Oliveri v. Thompson,
   803 F.2d 126 (2d Cir. 1986) ............................................................................................ 4, 5

Puglisi v. Underhill Park Taxpayer Assoc.,
   964 F. Supp. 811 (S.D.N.Y. 1997) ...................................................................................... 4

Ransmeier v. Mariani,
   718 F.3d 64 (2d Cir. 2013) ................................................................................................ 10

Schlaifer Nance & Co. v. Estate of Warhol,
   194 F.3d 323 (2d Cir. 1999) ................................................................................................ 5

Smith v. Westchester County Dep't of Corr., No. 07 Civ. 1803 (SAS),
   2013 WL 5192751, 2013 U.S. Dist. LEXIS 132006 (S.D.N.Y. Sept. 16, 2013) ........... 9, 10

Stern v. Regency Towers, LLC,
   886 F. Supp. 2d 317 (S.D.N.Y. 2012) ................................................................................. 6

United States Steel Corp. v. United States,
   519 F.2d 359 (1st Cir. 1975) ................................................................................................ 2

United States v. International Bhd. of Teamsters,
   948 F.2d 1338 (2d Cir. 1991) .............................................................................................. 5

## **STATUTES**

28 U.S.C. § 1927 ........................................................................................................................ 1, 5

42 U.S.C. § 1988 ................................................................................................................ 1, 2, 4, 13

# TABLE OF AUTHORITIES
### (cont.)

**Page(s)**

**RULES**

Fed. R. Civ. P. 11(b) .................................................................................................................. 4, 11

Fed. R. Civ. P. 11(c)(3) .................................................................................................................... 4

Fed. R. Civ. P. 54(d)(1) ................................................................................................................... 13

Fed. R. Civ. P. 54(d)(2) .................................................................................................................... 1

Fed. R. Civ. P. 56(h) ........................................................................................................... 1, 5, 6, 12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PATRICIO JIMENEZ,

                                      Plaintiff,

            - against -                            14 Civ. 2994 (SAS)

THE CITY OF NEW YORK, DETECTIVE       **ECF**
JAMES QUILTY, DETECTIVE MIGUEL
LOPEZ, and JOHN/JANE DOE #1,

                                 Defendants.

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR ATTORNEYS' FEES AND SANCTIONS

       Defendants City of New York, Detective James Quilty and retired Detective Miguel Lopez (collectively, "Defendants"), by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit the following memorandum of law in support of their motion pursuant to Rule 54(d)(2) of the Federal Rules of Civil Procedure for attorneys' fees under 42 U.S.C. § 1988 as the prevailing party in this civil rights action.  Defendants' motion further requests that the Court award Defendants sanctions pursuant to Rule 56(h) of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, as well as this Court's inherent powers to supervise and control its own proceedings.

### INTRODUCTION

       Plaintiff Patricio Jimenez and Plaintiff's wife, Mrs. Maribel Mosso-Gonzalez Jimenez, commenced this action on April 28, 2014.  While the original, 206-paragraph complaint alleged sixteen (16) separate causes of action against the Defendants, as well as numerous subsequently-dismissed parties, the gravamen of the lawsuit was Plaintiff's claim for false arrest arising out of his arrest on January 30, 2013 for domestic assault.  Ultimately, on September 24, 2015, this Court dismissed all remaining claims, finding that Plaintiff's entire case was based on the

1

fundamentally implausible notion that Mrs. Jimenez – the victim of Plaintiff's domestic abuse – had never reported the well-documented assault to anyone.  <u>See</u> Opinion and Order, dated September 9, 2015 ("S.J. Op."), at 21 (ECF No. 122).  Meanwhile, as evidenced by the lengthy record of the case, in the nearly eighteen months between the filing of the initial complaint and final judgment, Plaintiff, through his counsel, engaged in a number of dilatory and harassing tactics, all in an apparent attempt to suppress the critical evidence and avoid an examination of this case on its merits.

<u>ARGUMENT</u>

POINT I
<u>DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES UNDER 42 U.S.C. § 1988</u>

Section 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).  Defendants, the prevailing party in this action, are entitled to recover from Plaintiff Patricio Jimenez the costs and fees incurred in defending against this lawsuit.  Numerous courts, including the Supreme Court, have recognized that prevailing defendants in civil rights actions are entitled to recover attorney's fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation." <u>Fox v. Vice</u>, 536 U.S. ___, ___, 131 S.Ct. 2205, 2213 (2011) (quoting <u>Christiansburg Garment Co. v. EEOC</u>, 434 U.S. 412, 421 (1978) (in turn quoting <u>United States Steel Corp. v. United States</u>, 519 F.2d 359, 363 (1st Cir. 1975))).  Granting Defendants' request for fees under § 1988 does not require a finding that Plaintiff acted in bad faith by bringing and pursuing this litigation.[1]  <u>See</u>, <u>e.g.</u>, <u>Davidson v. Parshall</u>, 740 F.2d 129, 132-33 (2d Cir. 1984) (reversing denial of § 1988 fees against plaintiff because subjective bad

---

[1] The question of bad faith on the part of Plaintiff and/or his attorney, is discussed below in Defendants' request for sanctions.

2

faith is separate from the question of whether litigation was "frivolous, unreasonable or groundless," and while bad faith might provide a "stronger basis," it is not necessary for granting a request for fees); General Camera Corp. v. Urban Development Corp., 734 F.2d 468 (1984) (per curiam) (finding "the award of attorney's fees . . . was proper, even though the district court made no finding on whether [plaintiff] brought [the] action in bad faith.").

As this Court recognized in granting Defendants' motion for summary judgment, Plaintiff's entire case was premised on an allegation that was "simply too fantastic to be credible." S.J. Op. at 21. Far from the typical false arrest case, where the plaintiff/arrestee challenges only a report by an arresting officer of the alleged criminal conduct, Plaintiff in this case could only have prevailed by rebutting (or concealing) numerous contemporaneous written reports of the underlying assault. Three of those reports were made by third-party medical providers, who recorded the assault as part of their efforts to treat Mrs. Jimenez. Plaintiff conceded that he, himself, had "little, if any, testimony to provide" about the key fact at issue in the case – i.e., whether or not Mrs. Jimenez reported a domestic assault to the Defendants and others, both on the date of the assault and later. See S.J. Op. at 19 n.80 (quoting Plaintiff's Memorandum in Opposition to Summary Judgment). Thus, against the overwhelming evidence that his wife did, indeed, report a domestic assault both to the police and to medical providers, Plaintiff brought and maintained this suit with the intention of relying **solely** on the recantation testimony of his wife; testimony that the Court found "too fanciful to be believed." S.J. Op. at 22. Cf. Abeyta v. City of New York, No. 12 Civ. 5623 (KBF), 2014 U.S. Dist. LEXIS 33766, at *5-6 (S.D.N.Y. March 7, 2014) (awarding fees when it was clear, after a jury trial, that "there was no credible evidence to support [plaintiff's] claim."), aff'd 588 Fed. App'x 24, 25-26 (2d Cir. Dec. 15, 2014). At the very least, this litigation was "unreasonable" and "without

3

foundation," see Fox, 536 U.S. at ___, 131 S.Ct. at 2213, if not patently frivolous, and Defendants are therefore entitled to recover their costs and fees from defending against such claims.[2]

## POINT II
## THE COURT SHOULD AWARD SANCTIONS UNDER RULE 56(h), 28 U.S.C. § 1927, AND/OR ITS INHERENT POWERS TO SUPERVISE AND CONTROL ITS OWN PROCEEDINGS

If the Court grants Defendants' award for fees under 42 U.S.C. § 1988, that award will be "charged against the losing party, not his attorney." Oliveri v. Thompson, 803 F.2d 1265, 1272 (2d Cir. 1986). Defendants contend that at any fee award should also be levied against Plaintiff's counsel, Gregory P. Mouton, Jr., as a sanction for his conduct in bringing, maintaining, and needlessly protracting this frivolous lawsuit. There are at least three separate sources of authority for the Court to make such an award in this case.[3]

---

[2] See also Davidson, 740 F.2d at 132-33 (defendants are entitled to attorney's fees when the action "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it clearly became so." (quoting Hughes v. Rowe, 449 U.S. 5, 14-15 (1980))); Carrion v. Yeshiva Univ., 535 F.2d 722, 727 (2d Cir. 1976) (upholding fee award where litigation was found to be "unreasonable, frivolous, meritless or vexatious."); Carrion v. City of New York, No. 01 Civ. 2255 (NT), 2003 U.S. Dist. LEXIS 19909, at *3-8 (S.D.N.Y. 2003) (granting defendant's attorney's fees on what proved to be "nothing more than frivolous case[,]" after "disturbing factors . . . came to light at trial."); Delancett v. Village of Saranac Lake, 986 F. Supp. 126, 128-30 (S.D.N.Y. 1997) (Scullin, J.) (awarding fees to defendants where plaintiff "failed to produce one scintilla of evidence which could color a § 1983 claim" against them); Puglisi v. Underhill Park Taxpayer Assoc., 964 F. Supp. 811, 814-817 (S.D.N.Y. 1997) (Baker-Motley, J.) (awarding attorney's fees to defendants because "plaintiff's claims were meritless from the beginning."); Baasch v. Reyer, 846 F. Supp. 9, 10-11 (E.D.N.Y. 1994) (Wexler, J.) (awarding defendants' attorney's fees where "litigation was frivolous from the outset."); Kappenberger v. Oates, 663 F. Supp. 991, 992-93 (S.D.N.Y. 1987) (Cooper, J.) (experiencing "no difficulty whatsoever in finding plaintiff's entire claim was frivolous within the meaning of § 1988" following an eight day jury trial in which plaintiff repeatedly contradicted his previous statements); Kane v. City of New York, 468 F. Supp. 586, 591-92 (S.D.N.Y. 1979) (Weinfeld, J.) (awarding defendant's attorney's fees where plaintiff pursued vexatious and frivolous litigation).

[3] Rule 11(c)(3) of the Federal Rules of Civil Procedure also authorizes the Court to issue, on its own initiative, an Order to Show cause why specific conduct did not violate Rule 11(b).

4

First, a district court, exercising its inherent power to supervise and control its own proceedings, may award attorney's fees and costs to the prevailing party when the losing party "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." F.D. Rich Co. v. United States ex rel. Indus. Lumber Co., 417 U.S. 116, 129 (1974); United States v. International Bhd. of Teamsters, 948 F.2d 1338, 1345 (2d Cir. 1991).  Second, under 28 U.S.C. § 1927, a district court may award attorney's fees as a sanction against an attorney who "multiplies the proceedings in any case unreasonably and vexatiously."  Third, Rule 56(h) of the Federal Rules of Civil Procedure provides a further vehicle for sanctions against an attorney in cases like this, where an affidavit presented in opposition to a motion for summary judgment was "submitted in bad faith or solely for delay."[4]

To impose sanctions under either its inherent authority or 28 U.S.C. § 1927, the Court must find clear evidence that (1) the Plaintiff's claims were entirely without color, and (2) those claims were brought in bad faith – that is, "motivated by improper purposes such as harassment or delay." Schlaifer Nance & Co. v. Estate of Warhol, 194 F.3d 323, 336 (2d Cir. 1999); see also Agee v. Paramount Comm., 114 F. 3d 395, 398 (2d Cir. 1997).[5]  Similarly, courts have found

---

[4] Rule 56(h) states, in full:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court—after notice and a reasonable time to respond—may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result.  An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

[5] "The showing of bad faith required to support sanctions under 28 U.S.C. § 1927 is 'similar to that necessary to invoke the court's inherent power.'  In practice, 'the only meaningful difference between an award made under § 1927 and one made pursuant to the court's inherent power is . . . that awards under § 1927 are made only against attorneys or other persons authorized to practice before the courts while an award made under the court's inherent power may be made against an attorney, a party, or both.'" Enmon v. Prospect Capital Corp., 675 F.3d 138, 143-44 (2d Cir. 2012) (quoting Oliveri, 803 F.2d at 1273).

5

"bad faith" under Rule 56(h) when an attorney's conduct was "'egregious,' such as 'where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the case.'" Stern v. Regency Towers, LLC, 886 F. Supp. 2d 317, 327 (S.D.N.Y. 2012) (quoting Jaisan, Inc. v. Sullivan, 178 F.R.D. 412, 415-16 (S.D.N.Y. 1997)); see also Luscier v. Risinger Bros. Transfer, No. 13 Civ. 8553 (PKC), 2015 U.S. Dist. LEXIS 129640, at *20-21 (S.D.N.Y. Sept. 17, 2015) (awarding sanctions under Rule 56(h)).  From the record of this case, there can be little question that Plaintiff and his attorney acted in bad faith in bringing this action, employing harassing and vexatious tactics against the Defendants and, ultimately, in submitting patently false information to the Court in an effort to stave off summary judgment on the merits.

As the Court stated in its Opinion and Order granting Defendants' motion for summary judgment:

> Mrs. Jimenez may decline to testify in order to prevent her husband from being prosecuted for domestic assault, but it is galling to then use that recantation as a predicate to sue the City for false arrest and related claims. Litigation is not a sport; litigation is not a lottery. The City of New York should not be required to expend the time of its Corporation Counsel and the resources of its taxpayers defending against claims predicated on patently unbelievable testimony. The likelihood that both Mr. and Mrs. Jimenez have committed perjury is high.

S.J. Opp. at 22-23.  Plaintiff's counsel, a former Assistant Corporation Counsel, is at least equally responsible as his client in bringing and maintaining this action, and is solely culpable for the numerous tactics that both delayed the inevitable final judgment on the merits and needlessly increased the costs borne by Defendants.  As such, Plaintiff's counsel should be held jointly and severally liable any reimbursement of the time and resources expended by the City in defending against this action.

In the initial complaint, Plaintiff expressly alleged a claim denominated as "Conspiracy under § 1983." See Complaint (ECF No. 2) at ¶¶ 151-155.[6]  Prior to answering, counsel for the City wrote to Plaintiff's counsel pursuant to Rule IV(A) of the Court's Individual Rules and Procedures, setting forth numerous deficiencies in the complaint.  See generally Exhibit A to the Declaration of Tobias E. Zimmerman dated October 9, 2015 ("Zimm. Decl."), 06/09/14 Letter from E. Daitz.  In that letter, Defendants' counsel set forth detailed legal and factual reasons why the conspiracy claim was inadequately pled.  See id. at 2-3.  Rather than offer any argument in defense of what Defense counsel had described as the "primary allegation" of the Complaint, id., Plaintiff's counsel responded four days later to say merely that "Plaintiffs are willing to withdraw their conspiracy claim."  Zimm. Decl. Ex. B, 06/13/14 Letter from G. Mouton, at 1.[7] Nevertheless, despite Plaintiff's nominal "withdrawal" of his "Conspiracy" claim, the false arrest claim he continued to litigate was fundamentally premised on "Mrs. Jimenez's allegation of a sweeping conspiracy with no plausible motive by any of the participants," S.J. Op. at 22.  It is therefore clear that Plaintiff, abetted by his counsel, pursued a case based on allegations that were fundamentally without merit.

The conspiracy count was not the only claim that Plaintiff's counsel knew – or should have known – was improperly included in the initial complaint.  For example, despite the fact that Plaintiff Patricio Jimenez had zero contact with police prior to turning himself in at a

---

[6] The initial complaint alleged state law claims on behalf of both Plaintiff Patricio Jimenez and Mrs. Jimenez.  It was only the briefing on the various motions to dismiss which clarified that Mrs. Jimenez's claims were solely related to an allegedly improper disclosure of confidential medical records.  The Court subsequently dismissed those unrelated state-law claims for want of subject matter jurisdiction.

[7] Nevertheless, despite agreeing to withdraw this claim and confessing to numerous other shortcomings in the Complaint, Plaintiff's counsel precipitated unnecessary motions practice by nonsensically refusing to amend the admittedly deficient pleading until **after** the Defendants had answered.  See generally City Defendants' Motion for a More Definite Statement (ECF No. 23).

7

precinct more than a month after the incident for which he was arrested, Plaintiff's counsel nevertheless included a claim entitled "State & Federal Unlawful Stop and Search."  See Complaint (ECF No. 2) at ¶¶ 97-99.  When questioned on this claim by the Court at the Status Conference on July 7, 2014, Plaintiff's counsel could not articulate any factual basis for including it in the Complaint, and, upon further prompting, verbally agreed to withdraw it; however, he never returned the voluntary stipulation of dismissal prepared by defense counsel, thereby forcing Defendants to incur additional expense including discussion of that count in their motion to dismiss.  See Mem. in Support of City Defs.' Motion to Dismiss (ECF No. 54) at 4.

Nor did the pleading issues end with the Court's decision on the various motions to dismiss.  See Opinion and Order dated October 9, 2014 (ECF No. 60).  It took another three months, three separate court conferences, and three more pleadings (see ECF Nos. 63, 66 & 79) – two of which were stricken from the record (see Order dated December 15, 2014 (ECF No. 74)) – before the action was finally joined.  This further delay was caused entirely by Plaintiff's counsel's continuing efforts to maintain Mrs. Jimenez as a plaintiff in her own right, despite the Court's repeated admonitions that any claim Mrs. Jimenez might have was not sufficiently related to be included with her husband's false arrest claim.  At the second of these three conference the Court remarked on this apparent conduct of Plaintiff's counsel:

> [I]t does feel as if the Court's first opinion and order, which was a lot of work, essentially has been ignored, and so has the conference. It seems like plaintiffs' attorney is just determined to continue the lawsuit on behalf of Maribel Jimenez, even if there is really no legal ground to stand on and really no jurisdiction.

12/15/14 Conf. Tr. (ECF No. 75) at 03:11-18.  In short, at least three months of additional litigation, from October 2014 to January 2015, resulted solely from Plaintiff's counsel's desire to circumvent or ignore the rulings of the Court.

When the case finally reached the discovery stage, Plaintiff's counsel further compounded the burden on the City by serving ninety-two (92) separate document requests, which the Court has characterized as "very repetitive."  06/18/15 Conf. Tr. (ECF No. 101) at 32:09.  Included in those requests were many that were clearly directed towards Plaintiff's previously dismissed Monell claim against the City, such as demands for training and policy documents.  See, e.g., id. at 27:19-28:02 (sustaining objections to demands for training related documents); id. at 31:07-10 (sustaining objections to demands for policy documents).  At the time Plaintiff propounded these document requests, apparently in violation of Local Civil Rule 26.5, he was already in possession of all of the relevant documents that were considered on summary judgment.  Thus, the only motivation for serving those discovery demands was to harass the Defendants and waste the resources of the City and the Court with an unnecessary discovery dispute.  Indeed, the discovery at issue had zero impact on the final resolution of the case.  In any event, whether or not Plaintiff's counsel served those "very repetitive" document demands with the intention to harass or annoy the Defendants is irrelevant, and sanctions are still appropriate.  See Smith v. Westchester County Dep't of Corr., No. 07 Civ. 1803 (SAS), 2013 WL 5192751, 2013 U.S. Dist. LEXIS 132006, at *12 n.26 and accompanying text (S.D.N.Y. Sept. 16, 2013), aff'd 577 Fed App'x 17 (2d Cir. 2014) (saying "sanctions may be imposed for vexatious behavior 'when it is harassing or annoying, regardless of whether it is intended to be so.'" (quoting Cruz v. Savage, 896 F.2d 626, 632 (1st Cir. 1990)).

Finally, and of particular concern, is the decision by Plaintiff's counsel to submit an affidavit by Mrs. Jimenez that the Court found "too fanciful to be believed."  S.J. Op. at 22. At the Pre-Motion/Post-Discovery conference held on June 18, 2015, the Court explicitly warned Plaintiff's counsel (who also represents Mrs. Jimenez, both in connection with this matter and

9

the separate case she commenced in state court) that Mrs. Jimenez could expose herself to a perjury charge if she appeared to testify untruthfully in this case. See 06/18/15 Conf. Tr. (ECF No. 101) at 18:09-19:11.[8]  Nevertheless, when it came time to oppose Defendants' motion for summary judgment, Plaintiff's counsel proceeded to submit affidavits by both Mr. and Mrs. Jimenez that the Court found highly likely to be perjurious. See S.J. Op. at 23. The Court can, and should, infer bad faith from counsel's conduct in this regard.

Not only is Mrs. Jimenez's affidavit facially suspect, it constituted a significant departure from the one of the core factual allegations maintained by Plaintiff throughout this action. In the original complaint, Plaintiff and Mrs. Jimenez made the following allegations:

---

[8] Plaintiff's counsel attempted to deflect the Court's legitimate concern by accusing Defendants' counsel of "threatening" his clients. See 06/18/15 Conf. Tr. (ECF No. 101) at 19:02-05. This attempt to impugn the motives of Defendants' attorney is representative of a level of general antagonism by Plaintiff's counsel throughout this litigation. For example, Plaintiff filed at least three separate motions for sanctions in this case, see ECF Nos. 47, 89 and 90, none of which ever garnered more than a summary denial. In one of those motions, Mr. Mouton specifically accused the undersigned attorney of bad faith for "accessing, using, and exchanging" documents that were obtained from the Court's electronic filing system, and went on to decry that "Mr. Zimmerman has even had the audacity to attempt to use said documents as a basis to move for summary judgment." 06/01/15 Letter from G. Mouton (ECF No. 89) at 2-3. However, when the Court held a telephone conference the next day, Plaintiff's counsel appeared to summarily withdraw those serious allegations, saying "I apologize your Honor. I don't mean that it was Mr. Zimmerman that [sic] wrongfully obtained [the documents]." See 06/02/15 Conf. Tr. (ECF No. 97) at 12:07-09. Ultimately, it was those very same documents that proved central to the decision on summary judgment, despite Plaintiff's counsel's efforts to suppress them. This type of conduct is sanctionable. See Smith, 2013 WL 5192751, 2013 U.S. Dist. LEXIS, 132006, at *12-13 n.29 ("Sanctions may be imposed under a court's inherent authority where an attorney levels accusations of impropriety in bad faith.") (citing Gallop v. Cheney, 660 F.3d 580, 584 (2d Cir. 2011) (per curiam), vacated on other grounds, 667 F.3d 226, 231 (2d Cir. 2011)).

Mr. Mouton, a former Assistant Corporation Counsel, is a frequent litigant in § 1983 cases filed against the City. Insofar as he has allowed his personal feelings, either about this case or towards the Office of Corporation Counsel, to cloud his legal and professional judgment, sanctions are particularly appropriate. See Smith, No. 07 Civ. 1803 (SAS), 2013 WL 5192751, 2013 U.S. Dist. LEXIS 132006, at *11-12 n.27 and accompanying text (saying "[s]anctions may also be justified . . . especially where an attorney allows his 'antagonism' to 'undermine his legal judgment.'") (quoting Ransmeier v. Mariani, 718 F.3d 64, 69 (2d Cir. 2013)).

> Approximately 2 weeks after December 26, 2012, Defendant Quilty and his partner, who spoke Spanish, went to Mrs. Jimenez's home. **While there, Defendant Quilty's partner spoke with Mrs. Jimenez in Spanish.** Mrs. Jimenez told him repeatedly that she had not been abused by her husband. Mrs. Jimenez explained that she had fallen in her bathroom after becoming dizzy. She further informed Defendant Quilty's partner that the hospital staff had informed her that she has diabetes, and that she had become dizzy and fallen because she had not been regulating her blood sugar with medication. **Defendant Quilty's partner conveyed all of this information to Defendant Quilty.**

Complaint (ECF No. 2) at ¶¶ 68-72 (emphasis added). These same allegations were repeated in every one of the five versions of the pleading that Plaintiff's counsel filed over a period of nine (9) months. See, e.g., Second Amend. Compl. (ECF No. 79) at ¶¶ 39-43 (repeating the same allegations verbatim except substituting Detective Lopez's name for "Defendant Quilty's partner" in each averment). In their answer to the Second Amended Complaint, Defendants admitted that Detective Lopez translated the interview conducted by Detective Quilty, see Answer to the Second Amended Complaint (ECF No. 80) at ¶¶ 39-43, and when the Detectives ultimately testified in early June of this year, they corroborated that aspect of the pleadings. Thus, whatever dispute may have existed regarding the **substance** of Mrs. Jimenez's statement to the Defendants on January 21, 2013, there was no dispute of fact regarding the **manner** in which she conversed with Detective Quilty during this critical interview.

Because Plaintiff Patricio Jimenez was not personally present during the interview in question, Mrs. Jimenez was the **only** possible source of information that Plaintiff's counsel could have relied on when he drafted the original and amended pleadings. Assuming Plaintiff's counsel adequately investigated the factual basis for the claims prior to filing the complaint, as he is obligated to do under Rule 11(b), the only conclusion that can be drawn is that counsel had learned **from Mrs. Jimenez** that Detective Lopez translated the critical meeting that gave rise to probable cause. However, when it came time to oppose the motion for summary judgment,

Plaintiff's counsel filed an affidavit by Mrs. Jimenez claiming that "[b]ecause I do not speak English, [my daughter] Marian translated the conversation between me and the detectives. . . . The other detective [Detective Lopez] . . . did not speak with me[.]" Affidavit of Maribel Jimenez (ECF No. 114) at ¶¶ 12 & 19. There is simply no way to reconcile these two wildly divergent descriptions of the critical interview underlying the heart of this case. Either Plaintiff's counsel filed **multiple** pleadings containing information that contradicted what he had learned from Mrs. Jimenez during his investigation of the facts, or else he knowingly suborned perjury by filing an affidavit that he knew to be contrary to the truth.

Exacerbating an already serious offense is Plaintiff's counsel's own role in the preparation of Mrs. Jimenez's affidavit, which was written in English and only (allegedly) read to her in Spanish before she signed it. See "Affidavit of Translation" attached to Affidavit of Maribel Jimenez (ECF No. 114 at page 5 of 5); see also Defs.' Reply in Support of the Motion for Summary Judgment (ECF No. 119) at n.11 (discussing the irregular method by which Mrs. Jimenez's sworn statement was prepared). Absent extraordinary evidence to the contrary, the Court can infer that Mr. Mouton, a solo-practitioner and the only attorney representing Plaintiff and Mrs. Jimenez with respect to the underlying incident, **personally drafted** the affidavit that Mrs. Jimenez was asked to sign. Moreover, insofar as Mrs. Jimenez might later claim that any false statement contained in her affidavit resulted from her failure to clearly understand the statement she was affirming, blame for that miscommunication must fall squarely at the feet of Plaintiff's counsel, who also **personally signed** that affidavit in his role as a notary public, see Affidavit of Maribel Jimenez (ECF No. 114) at 4, thereby certifying that, in his presence on August 20, 2015, Mrs. Jimenez affirmed **the contents** of that affidavit. Cf. Luscier, No. 13 Civ. 8553 (PKC), 2015 U.S. Dist. LEXIS 129640, at *23-28 (imposing sanctions under Rule 56(h) on

12

counsel who falsely notarized an affidavit that was later disavowed). Whether or not he personally drafted Mrs. Jimenez's English-language affidavit, Plaintiff's counsel **knowingly** submitted information to the Court that he knew – or should have known – to be false. Such conduct can only have been undertaken in bad faith, and warrants sanctions.

## DEFENDANTS' APPLICATION FOR ATTORNEYS' FEES

As detailed in the supporting Declaration of Tobias E. Zimmerman, Defendants seek reimbursement for the time expended by four attorneys who reported a total of 264.75 hours expended on this case through September 25, 2015, the date of the final judgment. See Zimm. Decl. at ¶ 9 and Exhibit C thereto. As further discussed in the supporting declaration, the attorneys who worked on the case vary in seniority and experience. The two principal attorneys, Elizabeth Daitz and Tobias Zimmerman, have been practicing for nine and fifteen years, respectively. See Zimm. Decl. at ¶ 8. Attorneys with less experience than the attorneys on this case have been awarded $350 per hour and more in this District pursuant to 42 U.S.C. § 1988. See Zimm. Decl. at ¶ 15. Given these historic awards, the Office of Corporation Counsel asserts that a blended rate of $350 per hour for the work performed by the attorneys on this case is more than reasonable and, if anything, undervalues the professionalism and skill that the attorneys of the New York City Law Department bring to their representation of the City and its employees. Accordingly, Defendants request reimbursement in the amount of $ 92,662.50 in professional fees incurred while defending this baseless and frivolous lawsuit.[9]

---

[9] Because Defendants did not conduct any depositions during discovery their taxable costs were, at most, negligible. Defendants are therefore foregoing the submission of an application pursuant to Fed. R. Civ. P. 54(d)(1).

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court award them their attorneys' fees against Plaintiff and Plaintiff's counsel, jointly and severally, as well as such other and further relief as the Court may deem just and proper.

Dated:  New York, New York  
       October 9, 2015

**ZACHARY W. CARTER**  
Corporation Counsel of the City of New York  
*Attorney for Defendants City of New York, Quilty, and Lopez*  
100 Church Street  
New York, New York 10007  
(212) 356-2661

By: _____  
    Tobias E. Zimmerman  
    *Senior Counsel*  
    Special Federal Litigation Division

cc:    Gregory P. Mouton, Jr., Esq. (**via ECF**)  
       *Attorney for Plaintiff*