**RATES TECHNOLOGY INC., Plaintiff,**

**v.**

**BROADVOX HOLDING COMPANY, LLC, CYPRESS COMMUNICATIONS**
**OPERATING COMPANY, LLC, AND ABC COMPANIES, 1 TO 10, Defendants.**

**13 Civ. 0152 (SAS)**

**UNITED STATES DISTRICT COURT SOUTHERN DISTRICT OF NEW YORK**

**October 7, 2014**

Header ends here.

## OPINION AND ORDER

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I. INTRODUCTION

On June 9, 2014, I dismissed the patent infringement suit brought by Rates Technology Inc. ("RTI") against Broadvox Holding Company, LLC and Cypress Communications Operating Company, LLC (collectively "Broadvox").[1] Two weeks later, on June 23, 2014, Broadvox moved, under section 285 of Title 35 of the United States Code, to collect attorneys' fees and nontaxable costs from RTI and its former counsel, Springut Law PC ("Springut").[2] However, on August 1,

Page 2

2014, Broadvox withdrew its motion as to Springut.[3] Nonetheless, Broadvox now moves for attorneys' fees and nontaxable costs against RTI.

Springut, in a separate motion, moves under section 1927 of Title 28 of the United States Code, as well as under the Court's inherent authority, for sanctions, in the form of attorneys' fees, against Broadvox and its counsel.[4] For the reasons that follow, Broadvox's motion for attorneys' fees and nontaxable costs against RTI is DENIED, and Springut's motion for sanctions is DENIED.

## II. BACKGROUND

### A. RTI's Patents

In January 2013, RTI initiated this litigation by bringing a patent infringement suit against Broadvox.[5] RTI, a Delaware company, owns several patents in the telecommunications field, including the two telecommunications patents at issue, United States Patent No. 5,425,085 (the "'085 Patent") and United States Patent No. 5,519,769 (the "'769 Patent").[6] Both the '085 Patent and the



Case 1:14-cv-02994-JFK Document 128-12 Filed 11/06/15 Page 2 of 25

Rates Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y., 2015)

Page 3

'769 Patent have less than two years remaining until they expire.[7] RTI's president and shareholder, Gerald Weinberger, has authority from RTI's board of directors to enforce, at his discretion, the patents at issue.[8] However, the upcoming expiration of the patents at issue, and the resultant effect that will have on RTI's profitability, has led Weinberger to question his job security.[9]

**B. RTI's Business**

RTI's current businesses include the "support[] [of] several of its old customers with rate chip updates for their private pay telephones," "some consulting work," "work on some new inventions," and the "enforce[ment] of its patents."[10] The rate chip updates, however, only consist of "giv[ing] away" chips to customers — approximately a hundred chips to twenty-five customers in 2013.[11] RTI has not received payment for a rate chip in almost a decade.[12] Nor do records

Page 4

exist that document the distribution of chips.[13] Moreover, RTI refuses to reveal the identity of its chip customers.[14]

RTI's consulting work includes "advi[sing] [people] with respect to various telecommunication issues."[15] RTI received "a few hundred thousand dollars" in compensation for its consulting work from 2009 through 2013.[16] However, no contracts exist to memorialize the consulting work,[17] and RTI either did not retain the documents relating to its compensation for the consulting work, or it included the documents in a storage bin produced to Broadvox.[18] And again, RTI refuses to identify its consulting clients.[19]

RTI's work on new inventions has not generated any revenue from

Page 5

2009 through 2013.[20] RTI cites its inability to obtain patent protection for its new products as the obstacle to generating revenue.[21]

In relation to its patent enforcement, RTI derives a relatively large amount of its revenue from companies that pay RTI for covenant not to sue agreements ("CNS agreements").[22] These companies may or may not infringe RTI's patents, and have chosen to settle with RTI rather than litigate the issue.[23] The CNS agreements provide for a one-time payout, rather than an ongoing royalty payment.[24]

RTI also "continue[s] to try to move forward [with] products that [it] designed, developed and manufactured in conjunction with other companies."[25] RTI seeks to enter



-2-

into joint ventures with companies that will provide RTI's products or products that contain RTI's technology.26 These products include

Page 6

private pay telephones, BUSY BUSY telephones, and the plug product.27 RTI has manufactured all three of these products within the last ten years.28 However, RTI never sold the plug product.29 RTI has not received revenue from the sale of private pay phones in approximately four or five years,30 from the sale of BUSY BUSY telephones in seven or eight years,31 nor from the rights to manufacture BUSY BUSY telephones in the last two and a half to three years.32

## C. RTI Contacts Broadvox

In December 2012, Weinberger, without the assistance of counsel,33 began to contact Broadvox about Broadvox's possible infringement of RTI's patents.34 In the course of their communications, neither Weinberger nor Broadvox divulged anything other than self-serving assertions regarding the merits of RTI's

Page 7

infringement allegations.35 Weinberger urged a settlement, but Broadvox declined to settle on account of RTI's unwillingness to share the basis of its infringement allegations.36 In one email to Broadvox, Weinberger explained that Broadvox has "a lose-lose business proposition. No settlement, big unrecoverable legal expenses, and a huge risk of substantial loss at trial."37 Weinberger concluded the email with "[c]ongratulations. No way out; you lose!"38 Weinberger, in a subsequent email, reiterated that the "lose-lose proposition really sucks[,] that's why companies settle their differences."39 Weinberger instructed Broadvox to "stop [its] carping. Relax, and enjoy [the] holiday time; we will have the next four to five years to address our respective differences."40

Furthermore, in a telephone conversation between Weinberger and Broadvox's counsel, Alex Gertsburg, Weinberger conveyed to Broadvox that RTI had tested Broadvox's network and systems "[b]y making contact with

Page 8

[Broadvox's] customers."41 Weinberger, however, refused to identify these customers, instead saying that Broadvox "will get that information obviously in discovery."42 Weinberger later testified at his deposition, in response to "[w]hich Broadvox customers have you spoken with?", that RTI looked at Broadvox's website and "noted . . . that 17 of [Broadvox's 'Partners'] were already people who have . . . been covered under [RTI's] patents[.]"43 Weinberger further testified that he could not remember which of those "Partners" he contacted, but "if . . . showed the list[, he] could pick them out."44



-3-

Rates Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y., 2015)

Weinberger also represented during his telephone call with Gertsburg that two law firms had each provided to RTI a formal written opinion detailing Broadvox's alleged infringement of RTI's patents.45 However, Weinberger later testified that RTI "didn't get written [opinions] . . . [RTI] got reviews and opinions

Page 9

from . . . two firms."46 Weinberger refused to reveal the name of either firm.47

Weinberger further represented in his telephone call with Gertsburg that RTI had "done testing by two independent testing groups[.]"48 Weinberger testified at his deposition that these two independent testing groups consisted of an independent consultant, Shlomo Shur, and RTI.49 Weinberger asserted that RTI "substituted [itself] in this area [because it] felt particularly knowledgeable[.]"50

### D. Broadvox's Rule 11 Motion

After RTI filed the complaint in this case, Broadvox moved for sanctions under Federal Rule of Civil Procedure 11, arguing that RTI had not conducted a reasonable pre-suit investigation.51 RTI opposed the Rule 11 motion by detailing the various steps it and its now-retained counsel, Springut, took to

Page 10

investigate any possible infringement.52 I denied Broadvox's Rule 11 motion because Broadvox did not comply with Rule 11's safe harbor requirement.53 I also held that "because RTI conducted a pre-suit investigation to ascertain information about defendants' system and found that infringement may exist, it should not be sanctioned for filing suit and seeking discovery to confirm its suspicion."54

### E. RTI's Adjournment of the 30(b)(6) Deposition

In December 2013, RTI had intended to depose Broadvox pursuant to Federal Rule of Civil Procedure 30(b)(6).55 However, in the days preceding the scheduled deposition, RTI informed Broadvox that Broadvox's discovery remained incomplete and, as a result, RTI needed to adjourn the deposition.56 Broadvox

Page 11

disputes the truthfulness of RTI's reason for adjourning the deposition.57

### F. *Markman* Hearing

On December 27, 2013, I held a *Markman* hearing in this case.58 The following month, on January 28, 2014, I issued an Opinion and Order construing the claim terms in the patents at issue.59



**G. Springut Withdraws as RTI's Counsel**

On February 28, 2014, Springut moved to withdraw as counsel for RTI, citing RTI's failure to pay for legal services rendered by Springut.60 On March 4, 2014, I granted Springut's motion to be relieved as RTI's counsel, and allowed RTI thirty days to obtain new counsel.61 On April 4, 2014, I granted RTI

Page 12

additional time to obtain counsel — until April 28, 2014.62 On May, 8, 2014, I further extended RTI's deadline to obtain new counsel to June 6, 2014.63 On June 9, 2014, RTI had still not obtained new counsel, and because corporations may not appear pro se in the Southern District of New York,64 I dismissed RTI's case against Broadvox.65 To date, RTI has not obtained new counsel.66

**H. Broadvox Moves for Attorneys' Fees and Nontaxable Costs Against RTI and Springut**

After I dismissed the case, on June 23, 2014, Broadvox moved against RTI and Springut for an order declaring this case "exceptional" under section 285 and for an award of attorneys' fees and nontaxable costs.67 Broadvox's Memorandum of Law in support of its motion discussed almost exclusively section 285 as a legal basis for awarding attorneys' fees to Broadvox.68 Broadvox also

Page 13

mentioned briefly two other legal bases: (1) section 1927;69 and (2) the Court's inherent authority.70 However, Broadvox's Notice of Motion contained neither of those legal bases in its caption.71

On July 21, 2014, Springut filed its opposition arguing, among other things, that Broadvox cannot prevail against Springut because (1) section 285 does not apply to counsel,72 and (2) Broadvox cannot rely on section 1927 or the Court's inherent authority because (a) those bases did not appear in the caption of the Notice of Motion as required under Local Civil Rule of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rule") 7.1(a)(1),73 and (b) Broadvox's brief mention of those bases does not legally

Page 14

suffice to place them before the Court.74 Simultaneously with its opposition,75 Springut served Broadvox with a motion for sanctions under Rule 11,76 but did not file it with the Court in compliance with the safe harbor provision in Rule 11.77

On August, 1, 2014, Broadvox withdrew its motion as to Springut, but maintained it as to RTI.78 Springut in turn withdrew its Rule 11 motion against Broadvox.79 In its reply brief,



Case 1:14-cv-02994-JFK   Document 128-12   Filed 11/06/15   Page 6 of 25

*Rates Tech. Inc. v. Broadvox Holding Co.* (S.D.N.Y., 2014)

Broadvox stated that it felt the proper focus of its motion should be RTI exclusively and that notwithstanding Broadvox's withdrawal, the Court could have imposed sanctions against Springut under section 1927 or the Court's inherent authority.80

### I. Springut Moves for Sanctions Against Broadvox

Springut, in response to Broadvox's motion under section 285, now

Page 15

moves against Broadvox for sanctions under section 1927 and the Court's inherent authority, claiming that Broadvox filed its motion against Springut in bad faith.81 Springut seeks, as sanctions, attorneys' fees in the amount it expended to oppose Broadvox's motion.82

### J. RTI Fails to Oppose Broadvox's Motion

As RTI has still not obtained legal counsel, it cannot appear before the Court to oppose Broadvox's motion against it.83 And with the deadline for opposing the motion having elapsed on July 21, 2014, Broadvox has failed to timely oppose Broadvox's motion.84 Broadvox now moves unopposed for an award of attorneys' fees and nontaxable costs against RTI.85

## III. LEGAL STANDARD

The Second Circuit recently articulated in *Jackson v. Federal Express* that, in the context of an unopposed motion for summary judgment, "[a]

Page 16

non-response does not risk a default judgment[.]"86 Rather, "[b]efore summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed."87 The district court has discretion to "rely on other evidence in the record even if uncited."88 The district court must also "determine whether the legal theory of the motion is sound."89

District courts in the Southern District of New York have applied a similar standard in contexts other than an unopposed motion for summary judgment.90 For that reason, I extend the *Jackson* standard to an unopposed motion

Page 17

for attorneys' fees and nontaxable costs under section 285.

## IV. APPLICABLE LAW

### A. Sanctions Under 35 U.S.C. § 285



Kaas Tech. Inc. v. Robeaux Holding Co. (S.D.N.Y., 2014)

Section 285 provides, in its entirety, that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." In *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, the Supreme Court eschewed the former interpretation of section 285, and articulated a new, more flexible standard by which to assess sanctions under section 285.[91] The Court held that

> an "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the

Page 18

> totality of the circumstances.[92]

Under this standard, "a district court may award fees in the rare case in which a party's unreasonable conduct — while not necessarily independently sanctionable — is nonetheless so 'exceptional' as to justify an award of fees."[93] Section 285 "demands a simple discretionary inquiry; it imposes no specific evidentiary burden, much less such a high one."[94] However, "[t]he purpose of section 285, unlike that of Rule 11, is not to control the local bar's litigation practices . . . but is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust, based on the baselessness of the suit or because of litigation or Patent Office misconduct, to require it to bear its own costs."[95]

Section 285, in essence, may require "in exceptional cases . . . the losing party to reimburse the prevailing party its attorney fees."[96] However, "no

Page 19

legal basis [exists under section 285] for entering a fee award against the losing party's attorney."[97]

### B. Sanctions Under 28 U.S.C. § 1927 and the Court's Inherent Authority

Apart from section 285, two additional bases for sanctions exist. *First*, under section 1927, a court may require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[98] *Second*, a court "may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[99]

To impose either of these sanctions, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith — that is, 'motivated by improper purposes such as



Page 20

harassment or delay.'"[100] A claim entirely without color "lacks any legal or factual basis."[101] A colorable claim, however, "has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim."[102] To establish bad faith, sanctions under section 1927 and a court's inherent authority require a similar showing — "bad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'"[103] Moreover, "[t]he court's factual findings of bad faith must be characterized by 'a high degree of specificity.'"[104]

In practice, sanctions under section 1927 and sanctions pursuant to a court's inherent authority materially differ only in that "awards under [section] 1927 are made only against attorneys or other persons authorized to practice before

Page 21

the courts while an award made under the court's inherent power may be made against an attorney, a party, or both."[105]

## V. DISCUSSION

### A. Springut's Motion for Attorneys' Fees Against Broadvox

### 1. Broadvox Did Not File Its Motion for Attorneys' Fees in Bad Faith

### a. Although Broadvox Brought Its Motion Against Springut Under a Faulty Legal Theory, That Does Not Require a Finding of Bad Faith

Broadvox's motion for attorneys' fees and nontaxable costs against RTI and Springut relied predominantly on section 285 as a legal basis for sanctions.[106] Broadvox, however, failed to address the applicability of section 285 to counsel. Both Broadvox and Springut agree that section 285 does not authorize sanctions against counsel. Thus, Broadvox incorrectly relied upon section 285 when asserting its claims against Springut.

Springut argues that because section 285 does not apply to counsel, "bad faith may be inferred [because Broadvox's motion was] so completely without merit as to require the conclusion that [it must have been filed] for some

Page 22

improper purpose such as delay."[107] However, this standard does not *require* an inference of bad faith, it merely *authorizes* one. For the following reasons, I decline to draw this inference.

### b. Equally Plausible Scenarios Exist Other than Bad Faith



Springut argues in its motion for sanctions against Broadvox that Broadvox's failure to discuss the applicability of section 285 to counsel amounted to more than just "mere incompetence."[108] Springut believes that Broadvox moved in bad faith.[109] Springut claims that Broadvox knew that section 285 did not apply to counsel, and that Broadvox "surreptitiously invoked alternative bases [that is, section 1927 and the Court's inherent authority], and then by sleight-of-hand, sought to use the more liberal standard of Section 285 . . . to apply to those other bases."[110]

Springut bases its "sleight-of-hand" argument on a number of factors: (1) Broadvox's Notice of Motion only cited section 285, not section 1927 or the

Page 23

Court's inherent authority,[111] (2) Broadvox's Memorandum of Law extensively discussed section 285 to the exclusion of section 1927 or the Court's inherent authority,[112] (3) Broadvox placed great emphasis on the newer, more liberal standard under section 285 that the Supreme Court recently articulated in *Octane* Fitness,[113] (4) Broadvox acknowledged in a footnote that Rule 11 has a more stringent standard than section 285, and thus it would not proceed under Rule 11 for sanctions against Springut,[114] and (5) Broadvox's failure to provide the respective legal standards for section 1927 or the Court's inherent authority, as well as apply any of the facts to those standards.[115]

Springut argues that these factors evidence Broadvox's effort to invoke section 1927 and the Court's inherent authority (both of which apply to counsel), but focus only on section 285, which has a lower threshold of liability than either section 1927 or the Court's inherent authority, in order to conflate the standards and prevail on the basis of the relatively easier section 285 standard.[116]

Page 24

Springut argues further that Broadvox's acknowledgment that Rule 11 has a more stringent standard[117] than section 285 indicates that Broadvox should not have relied upon section 1927 or the Court's inherent authority, both of which have standards even more stringent than Rule 11.[118]

Springut's "sleight-of-hand" argument, however, fails to satisfy the legal standard required to impose sanctions under section 1927 and the Court's inherent authority — clear evidence of bad faith characterized by a high degree of specificity. Here, Springut has not provided clear evidence of bad faith; rather, on the facts as presented, more than one equally plausible scenario exists. Springut urges the Court to conclude that Broadvox acted in bad faith, but absent clear evidence with a high degree of specificity, I cannot impose sanctions against Broadvox.

### c. One Plausible Scenario — Poor Lawyering

### i. Broadvox's Motion



Case 1:14-cv-02994-JFK   Document 128-12   Filed 11/06/15   Page 10 of 25

Rates Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y, 2014)

Page 25

One plausible scenario is that Broadvox's counsel were not as careful as they should have been. It is plausible that Broadvox mistakenly relied upon a faulty legal theory — section 285 — as a basis for sanctions against Springut.119 And as an alternate theory of liability, Broadvox invoked section 1927 and the Court's inherent authority, but failed to discuss these theories extensively because it felt confident in its argument on section 285 grounds. Or Broadvox may have mistakenly invoked section 1927 and the Court's inherent authority without realizing that the standards differed for each.120 Or, as Broadvox articulates in its

Page 26

opposition to Springut's motion, Broadvox believed (and may still believe) that many similar factors overlap across the three standards, and thus Broadvox felt it had adequately invoked and applied section 1927 and the Court's inherent authority.121

### ii. Springut's Opposition

Springut served its opposition and Rule 11 motion on Broadvox, arguing that section 285 does not apply to counsel,122 and that Broadvox cannot rely on section 1927 or the Court's inherent authority because (1) Broadvox did not include these bases in the Notice of Motion — a violation of Local Civil Rule 7.1(a)(1),123 and (2) Broadvox's brief invocation of these bases does not legally suffice to bring them before the Court.124

Page 27

Springut argues that "Broadvox's [t]reatment [o]f [t]he [a]lternative [b]ases [i]t [i]nvoked [w]as [n]o [m]ere [c]aptioning [e]rror," but rather Broadvox had been acting in bad faith.125 However, Broadvox's actions do not clearly evidence bad faith. Careless lawyering, once again, can explain both Broadvox's error in not including section 1927 and the Court's inherent authority in the Notice of Motion, as well as Broadvox's insufficient invocation of the alternative bases.

### iii. Broadvox's Reply

Springut argues further that had Broadvox really intended to invoke section 1927 and the Court's inherent authority, Broadvox should have elaborated on those bases in its reply brief.126 However, Broadvox has the prerogative not to pursue a given claim. Springut believes Broadvox's failure to pursue sanctions under section 1927 or the Court's inherent authority proves that Broadvox moved initially in bad faith.127 But, as previously stated, such an inference does not amount to clear evidence of bad faith. Broadvox may have plausibly decided not to move forward under section 1927 and the Court's inherent authority because it

Page 28



Case 1:14-cv-02994-JFK Document 128-12 Filed 11/06/15 Page 11 of 25

Katal Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y., 2007)

felt that although the Court might find in its favor, the likelihood was low. Or Broadvox, as it states in its papers, may have honestly felt that the proper focus should be on RTI and not Springut,[128] and therefore decided to withdraw all of its claims against Springut, even though the claims may have been meritorious.[129] Springut has therefore failed to clearly evidence Broadvox's bad faith.

### d. Broadvox's Withdrawal Favors a Finding of No Bad Faith

When Broadvox realized the deficiencies in its motion for attorneys' fees, it timely withdrew its motion as to Springut.[130] While Broadvox's withdrawal

Page 29

does not by itself immunize Broadvox from sanctions, withdrawing, rather than maintaining, the motion dispels the notion that Broadvox acted in bad faith. When combined with the equally plausible scenarios detailed above, Broadvox's withdrawal does not support the kind of bad faith plot Springut describes in its papers.[131] Springut has not demonstrated through clear evidence that Broadvox acted in bad faith.

### e. Broadvox's Alleged Misrepresentations Do Not Evidence Bad Faith

Springut also claims that Broadvox's motion papers contain "false statements, half-truths and misleading statements" about Springut's conduct over the course of the litigation.[132] Springut argues that this further evidences Broadvox's bad faith.[133] However, these "false statements, half-truths and misleading statements" that Springut complains of merely represent attorney argument, and at most slight exaggeration.[134] None of the statements contained in

Page 30

Broadvox's motion amount to bad faith.

### f. Broadvox's Failure to Oppose Counter-Arguments Does Not Evidence Bad Faith

Lastly, Springut argues that Broadvox failed to address various counter-arguments posited by Springut in opposition to Broadvox's motion.[135] However, this too cannot qualify as bad faith. Failure to address counterarguments may have been a tactical, albeit risky, decision by Broadvox. But, as discussed above, a finding of bad faith requires clear evidence. Springut has again failed to provide the Court with clear evidence.

### 2. Springut Could Have Avoided This Situation Entirely

Although Broadvox initially filed a motion against Broadvox under a legal theory that did not apply to counsel, Springut had the opportunity to dispose of the motion in multiple ways that would have avoided the costs of opposing Broadvox's motion. Springut, however, chose



Case 1:14-cv-02994-JFK  Document 128-12  Filed 11/06/15  Page 12 of 25

Rates Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y. 2015)

not to. Springut could have contacted Broadvox and explained the legal error in Broadvox's motion, and

Page 31

Broadvox may have withdrawn the motion with no further action by Springut. Or Springut could have written to the Court and asked for a conference to discuss whether Broadvox's motion could proceed against Springut under section 285.[136] Or Springut could have served its Rule 11 motion in advance of its opposition, which would have allowed Broadvox the opportunity to withdraw its motion before Springut filed an opposition. In any of these scenarios, Springut could have avoided the cost of filing an opposition.

Springut argues, however, that its motion for attorneys' fees under section 1927 and the Court's inherent authority does not have the same safe harbor requirement as a Rule 11 motion.[137] Springut asserts that it does not have to afford Broadvox the opportunity to withdraw, especially given that Broadvox "directly attacked [Springut with a] frivolous, bad faith motion filed on the public record."[138]

Page 32

None of Springut's arguments have merit. While section 1927 and the Court's inherent authority do not provide a safe harbor provision, if Springut truly desired to avoid the cost of filing an opposition, it could have taken any of the approaches specified above. And if Springut felt concerned that Broadvox's allegations would remain on the public record, Springut could have gone on record at a conference before the Court. But even Springut's insistence on setting the record straight lacks force, given that Broadvox would have withdrawn its motion, and along with it its allegations. Springut's decision to file an opposition rather than pursue an alternative course of action has only resulted in more legal fees for every party, as well as a greater consumption of judicial resources.

### B. Broadvox's Motion for Sanctions Against RTI

### 1. RTI's Failure to Oppose Broadvox's Motion for Attorneys' Fees and Costs Does Not Allow for a Default Judgment Against RTI

Although RTI, by virtue of its lack of representation, has failed to oppose Broadvox's motion for attorneys' fees and costs, Broadvox is not automatically entitled to a default judgment against RTI. Rather, Broadvox must still show that RTI's conduct meets the standard for sanctions under section 285. For the reasons that follow, I find that RTI's conduct does not meet the section 285

Page 33

standard.[139]



## 2. RTI's Conduct Did Not Cause Broadvox to Incur Additional Attorneys' Fees and Costs

RTI, whether acting through Weinberger or through Springut, did not commit any wrongdoing that resulted in needless attorneys' fees or costs to Broadvox. Sections 285 is intended "not to control the local bar's litigation practices[,]" but to "compensat[e] the prevailing party for the costs it incurred . . . where it would be grossly unjust, based on the *baselessness* of the suit . . . to bear its own costs."140 Broadvox, however, makes several arguments. *First*, Broadvox complains of RTI's pre-suit conduct141 — namely, among others, Weinberger's "misrepresentations" about RTI's pre-filing investigation,142 and Weinberger's "threats" that Broadvox might face significant financial distress if it did not settle with RTI.143 However, given that Springut, once retained, conducted additional

Page 34

pre-filing investigation144 — that I later found reasonable145 — and that Broadvox did not ultimately settle with RTI, Broadvox cannot claim any unnecessary financial injury based on Weinberger's "misrepresentations" and "threats."

*Second*, Broadvox contends that RTI's suit was frivolous and that RTI's claim construction positions were baseless.146 With respect to the underlying suit, this Court's decision to dismiss the case based on RTI's failure to obtain counsel, was not based on an evaluation of the merits and made no finding as to whether the suit was frivolous. Moreover, the record contains no more than conclusory statements by Broadvox that its products do not infringe RTI's patents.147 Without a merits determination in this litigation and without evidence of non-infringement in the record, I cannot find that RTI's suit had no merit.

Regarding RTI's claim construction positions, I do not and did not find them baseless. Although I ruled against RTI when construing many of the

Page 35

claim terms,148 RTI supported its positions with relevant case law.149 Because Broadvox has failed to show that RTI's suit and claim construction positions had no merit, I cannot find that Broadvox incurred needless costs in litigating the suit or preparing for and conducting the *Markman* hearing.

*Third*, Broadvox argues that RTI is a non-practicing entity and hyper-litigious.150 However, even if these contentions are accurate, the absence of any evidence in the record demonstrating that RTI's claims were frivolous precludes Broadvox from asserting that it should not have had to incur the costs of defending this litigation. If RTI's claims had merit, its status as a hyper-litigious non-practicing entity should not prevent it from bringing suit.151

Page 36



Case 1:14-cv-02994-JFK   Document 128-12   Filed 11/06/15   Page 14 of 25

Rates Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y., 2014)

*Fourth*, Broadvox takes exception to RTI's adjournment of the 30(b)(6) deposition.[152] RTI, in adjourning the deposition, had noted that Broadvox's document production — specifically on the issue of infringement — remained inadequate.[153] Broadvox argues, however, that the deposition's purpose consisted, in part, of testing whether Broadvox had in fact produced all the relevant documents.[154] Broadvox also argues that had the deposition occurred, Broadvox would have dispositively demonstrated non-infringement, and the *Markman* hearing would have been unnecessary.[155] However, given that Broadvox has failed to cite to any documentary evidence of non-infringement, I find that RTI had good reason to adjourn the deposition as it appears likely that Broadvox had not produced all of the relevant documents. Had RTI continued with the deposition, RTI would only have confirmed Broadvox's lack of production thereby necessitating a second deposition once Broadvox had produced the relevant documents. As such, Broadvox cannot argue that it had to incur additional fees or

Page 37

costs due to the adjournment of the deposition.

In *Octane Fitness*, the Supreme Court counseled district courts to consider the totality of the circumstances when deciding whether to deem a case "exceptional" and award attorneys' fees to the prevailing party.[156] Here, none of RTI's actions, misrepresentations, or threats rise to the level of "exceptional." As explained above, Broadvox did not suffer any unwarranted attorneys' fees or costs as a result of RTI's conduct.[157] I therefore do not find this case "exceptional" and deny the award of attorneys' fees and costs to Broadvox.

Page 38

## VI. CONCLUSION

For the foregoing reasons, Broadvox's motion for attorneys' fees and nontaxable costs against RTI is DENIED and Springut's motion for sanctions is DENIED. The Clerk of the Court is directed to close these motions IDkt. Nos. 142, 163, 171].

SO ORDERED:

/s/_____

Shira                                A.                                Scheindlin
U.S.D.J.

Dated:          New          York,          New          York
        October 7, 2014

Page 39



-Appearances-



Case 1:14-cv-02994-JFK   Document 128-12   Filed 11/06/15   Page 15 of 25

Rates Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y., 2004)

**Gerald Weinberger (Pro Se):**

President of Rates Technology Inc. Fairfield Village Plaza 50 Route 111, Suite 210 Smithtown, New York 11787 (631) 360-0157

**For Springut Law PC:**

Milton Springut, Esq. Tal S. Benschar, Esq. Scott Spencer, Esq. 45 Rockefeller Plaza, 20th Floor New York, New York 10111 (212) 813-1600

**For Defendants Broadvox Holding Company, LLC and Cypress Communications Operating Company, LLC:**

Andriy R. Pazuniak, Esq. Carter Ledyard & Milburn LLP 2 Wall Street New York, New York 10005 (212) 732-3200

Alex Gertsburg, Esq. The Gertsburg Law Firm Co., LPA 36 South Franklin Street Chagrin Falls, Ohio 44022 (440) 571-7775

George Pazuniak, Esq. O'Kelly Ernst & Bielli, LLC 901 N. Market Street, Suite 1000 Wilmington, Delaware 19801

Page 40

(302) 478-4230


--------

Footnotes:



Case 1:14-cv-02994-JFK  Document 128-12  Filed 11/06/15  Page 16 of 25

Rates Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y. 2014)

[1.](#) *See* 6/9/14 Order at 2 [Dkt. No. 140].

[2.](#) *See* Motion of Defendants Broadvox Holding Company, LLC and Cypress Communications, LLC for Order Under 35 U.S.C. 285 Declaring This an Exceptional Case and Awarding to Defendants Their Attorneys' Fees and Nontaxable Costs ("Broadvox Notice of Motion") at 1-2.

[3.](#) *See generally* 8/1/14 Notice of Withdrawal of Motion as to Springut Law P.C. ("Springut Withdrawal") [Dkt. No. 160].

[4.](#) *See* 8/7/14 Notice of Motion for Sanctions ("Springut Motion").

[5.](#) *See* First Amended Complaint ¶ 6.

[6.](#) *See id.* ¶¶ 11, 19.

[7.](#) *See Markman* Hearing Transcript ("Markman Tr.") at 5:2-9.

[8.](#) *See* Deposition Transcript of Gerald Weinberger ("Weinberger Tr.") at 91:4-11.

[9.](#) *See id.* at 92:24-93:15.

[10.](#) *Id.* at 27:12-21.

[11.](#) *Id.* at 29:23-31:3. RTI's distribution of rate chips has "rapidly diminish[ed]" in recent years. *Id.* at 32:19-33:3.

[12.](#) *See id.* at 31:4-15.

[13.](#) *See id.*

[14.](#) *See id.* at 31:16-32:7. Magistrate Judge Sarah Netburn ruled that RTI need not identify its customers. *See id.* at 78:15-81:24.

[15.](#) *Id.* at 32:8-15.

[16.](#) *Id.* at 34:7-35:5. RTI's compensation for consulting work accounts for a "relatively small" percentage of RTI's total revenue. *Id.* at 39:3-19.

[17.](#) *See id.* at 32:16-18.

[18.](#) *See id.* at 35:6-11. Broadvox has not confirmed whether these documents do in fact remain in the storage bin. Weinberger stated that the compensation from consulting work would have appeared on RTI's tax returns. *See id.* at 35:15-19. Broadvox has not confirmed this statement.

[19.](#) *See id.* at 35:20-38:9.

[20.](#) *See id.* at 38:10-39:2.



Case 1:14-cv-02994-JFK   Document 128-12   Filed 11/06/15   Page 17 of 25

*Kates Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y., 2004)*

21. *See id.*

22. *See id. at* 39:16-40:9.

23. *See id.*

24. *See id.* at 237:15-239:6.

25. *Id.* at 42:11-14.

26. *See id.* at 43:4-7.

27. *See id.* at 42:14-19.

28. *See id.* at 44:5-7.

29. *See id.* at 44:10-11.

30. *See id.* at 49:23-50:6.

31. *See id.* at 50:9-20.

32. *See id.* at 50:23-51:6.

33. *See id.* at 113:11-12; 114:7-9; 118:7-18.

34. *See generally* RTI's Weinberger E-mails ("Weinberger E-mails"), Ex. H to Declaration of George Pazuniak in Support of Defendants' Motion for Sanctions ("Pazuniak Decl.").

35. *See generally id.* at 3; 12/18/12 Letter from Broadvox to Weinberger ("12/18/12 Letter"), Ex. I to Pazuniak Decl.; 12/27/12 Letter from Broadvox to Weinberger ("12/27/12 Letter"), Ex. J to Pazuniak Decl.

36. *See* Weinberger E-mails at 4.

37. *Id.* at 3.

38. *Id.*

39. *Id.* at 1.

40. *Id.*

41. 12/20/12 Transcript of Conversation between Weinberger and Gertsburg ("Gertsburg Tr."), Ex. A-10 to Declaration of Alex Gertsburg in Support of Motion of Defendants Broadvox Holding Company, LLC and Cypress Communications, LLC for Order Under 35 U.S.C. 285 Declaring This an Exceptional Case and Awarding to Defendants Their Attorneys Fees and Nontaxable Costs ("Gertsburg Decl."), at 5.

42. *Id.*



-17-

Case 1:14-cv-02994-JFK   Document 128-12   Filed 11/06/15   Page 18 of 25

*Rates Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y. 2014)*

43. *See* Weinberger Tr. at 124:13-25.

44. *Id*. at 131:8-12.

45. *See* Gertsburg Tr. at 6.

46. Weinberger Tr. at 255:3-9.

47. *See id*. at 255:10-256:11.

48. Gertsburg Tr. at 6.

49. *See* Weinberger Tr. at 258:17-259:15.

50. *Id*. at 259:13-14.

51. *See generally* Defendants' Motion for Sanctions Under Rule 11 of the Federal Rules of Civil Procedure; Defendants' Memorandum of Law in Support of Motion for Sanctions Under Rule 11 of the Federal Rules of Civil Procedure.

52. *See* Plaintiff's Memorandum of Law in Opposition to Rule 11 Motion at 7-8.

53. *See Rates Technology Inc. v. Broadvox Holding Co*., No. 13 Civ. 0152, 2014 WL 46538, at *5 (S.D.N.Y. Jan. 6, 2014). Rule 11 provides that "[a] motion for sanctions . . . must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2).

54. *Rates*, 2014 WL 46538, at *5.

55. *See generally* E-mails Regarding the Scheduling of the Deposition, Ex. A to Pazuniak Decl.

56. *Id*. at 7-8.

57. *See* Memorandum in Support of Motion of Defendants Broadvox Holding Company, LLC and Cypress Communications, LLC for Order Under 35 U.S.C. 285 Declaring This an Exceptional Case and Awarding to Defendants Their Attorneys Fees and Nontaxable Costs ("Broadvox Mem.") at 20-21.

58. *See Rates Technology Inc. v. Broadvox Holding Co*., No. 13 Civ. 0152, 2014 WL 323256, at *1 (S.D.N.Y. Jan. 28, 2014) ("*Broadvox II*").

59. *See id*.

60. *See* Memorandum of Law in Support of Motion by Springut Law P.C. to Be Relieved As Counsel, Dkt. No. 128, at 1. Springut has sought to recover its legal fees from RTI by initiating an action against RTI in state court. *See* Counsel's Memorandum of Law in Support



Case 1:14-cv-02994-JFK Document 128-12 Filed 11/06/15 Page 19 of 25

Rates Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y. 2014)

of Motion for Sanctions Against Defendants and Their Counsel ("Springut Sanctions Mem.") at 1.

61. *See generally* 3/4/14 Memo Endorsement [Dkt. No. 130].

62. *See generally* 4/4/14 Endorsed Letter [Dkt. No. 133].

63. *See* 6/9/14 Order at 2 [Dkt. No. 140].

64. *See* Representing Yourself in Federal Court *(Pro Se)*, http://www.nysd.uscourts.gov/courtrules_prose.php ("[C]orporations and partnerships must be represented by an attorney.").

65. *See* 6/9/14 Order at 2 [Dkt. No. 140].

66. No new counsel has entered an appearance for RTI as of the date of this Opinion and Order. *See generally* 13 Civ. 0152 (SAS).

67. *See* Broadvox Notice of Motion at 1-2.

68. *See* Broadvox Mem. at 7.

69. *See id.* at 7 ("For the same reasons as those supporting the 'exceptional case' finding, Broadvox is also entitled to its fees and expenses under 28 U.S.C. § 1927 . . .").

70. *See id.* at 30 ("District courts have broad power under § 285, as well as under their inherent authority, to award taxable costs, nontaxable costs and attorneys' fees in patent infringement cases.").

71. *See* Broadvox Notice of Motion at 1.

72. *See* Counsel's Memorandum of Law in Opposition to Motion for Attorney's Fees and Costs ("Opp. Mem.") at 1.

73. *See id.* at 5. Local Civil Rule 7.1(a)(1) provides, in relevant part, that "all motions shall include . . . [a] notice of motion . . . which shall specify the applicable rules or statutes pursuant to which the motion is brought[.]"

74. *See* Opp. Mem. at 5.

75. *See generally* 9/3/14 Email from Milton Springut, counsel for Springut and former counsel for RTI, to the Court ("Springut Email").

76. *See* Springut Sanctions Mem. at 1.

77. *See id.; see also supra* note 53.

78. *See generally* Springut Withdrawal.



-19-

79. I assume Springut withdrew the Rule 11 motion as Springut never filed it with the Court.

80. *See* Defendants' Reply Brief in Support of Its Motion for Declaration of Exceptional Case and Granting Sanctions Against Plaintiff ("Broadvox Reply") at 1, 3.

81. *See generally* Notice of Motion for Sanctions ("Springut Motion").

82. *See generally id.*

83. *See supra* note 64.

84. *See* 7/2/14 Scheduling Order at 1 [Dkt. No. 152]. RTI, through Weinberger, has on several occasions attempted to oppose Broadvox's motion pro se. *See generally* 7/18/14 Letter from Weinberger; 9/3/14 Letter from Weinberger to the Court (attaching a prior email from Weinberger to the Court).

85. *See* Notice of Motion for Default Judgment at 2 (requesting a total award of $364,950.71).

86. — F.3d —, 2014 WL 4412333, at *3 (2d Cir. Sept. 9, 2014).

87. *Id.*

88. *Id.*

89. *Id.*

90. *See, e.g., Trustees for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund and Training Program Fund v. Odessy Constructioncorp*, No. 14 Civ. 1560, 2014 WL 3844619, at *2 (S.D.N.Y. Aug. 1, 2014) ("[U]nopposed confirmation petitions must fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.") (citations and quotations omitted); *Sulzer Mixpac USA, Inc. v. Shanghai NSJ Hardware Ltd.*, No. 09 Civ. 9705, 2013 WL 5997707, at *3 (S.D.N.Y. Nov. 13, 2013) ("Although NSJ has not opposed the instant motion for contempt sanctions, the Court has the responsibility to ensure that the damages and fine sought by Sulzer are appropriate.") (citations omitted); *Stengel v. Black*, No. 10 Civ. 8661, 2011 WL 4975767 (S.D.N.Y. Oct. 18, 2011) (evaluating Rule 11 motion on the merits despite lack of opposition); *Martell v. Astrue*, No. 09 Civ. 1701, 2010 WL 4159383, at *2 n.4 (S.D.N.Y. Oct. 20, 2010) ("This Court recognizes its obligation to review the record before granting an unopposed motion [for judgment on the pleadings.]"); *Haas v. Commerce Bank*, 497 F. Supp. 2d 563, 564 (S.D.N.Y. 2007) ("[F]ailure to oppose a 12(b)(6) motion cannot itself justify dismissal of a complaint.") (citations and quotations omitted). *Cf. Baptiste v. Sommers*, — F.3d —, 2014 WL 4723272, at *1 (2d Cir. Sept. 24, 2014) (holding that the district court must still consider the five-factor test in *Lucas v. Miles*, 84 F.3d 532, 535 (2d Cir. 1996), before granting dismissal for failure to prosecute under Federal Rule of Civil Procedure 41(b), even where the plaintiff had "a long and unexplained delay").



[91.](#) 134 S. Ct. 1749, 1756 (2014) ("Th[e] [former interpretation] superimpose[d] an inflexible framework onto statutory text that is inherently flexible.").

[92.](#) *Id.*

[93.](#) *Id.* at 1757.

[94.](#) *Id.* at 1758.

[95.](#) *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1310 n.1 (Fed. Cir. 2012), *vacated and remanded*, 134 S. Ct. 1744 (2014); *see also Gametek LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (citing *Highmark*, 687 F.3d at 1310 n.1).

[96.](#) *Phonometrics, Inc. v. ITT Sheraton Corp.*, 64 Fed. App'x 219, 222 (Fed. Cir. 2003).

[97.](#) *Id.* Generally, "[w]hen a fee-shifting statute that authorizes the courts to award attorneys' fees to prevailing parties does not mention an award against the losing party's attorney [as is the case in section 285], the appropriate inference is that an award against attorneys is not authorized." *Healy v. Chelsea Resources, Ltd.*, 947 F.2d 611, 624 (2d Cir. 1991).

[98.](#) 28 U.S.C. § 1927 (2012).

[99.](#) *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

[100.](#) *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)).

[101.](#) *Sierra Club v. United States Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985) (citing *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980)).

[102.](#) *Nemeroff*, 620 F.2d at 348.

[103.](#) *Schlaifer Nance*, 194 F.3d at 336 (quoting *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir.1996) (quotations omitted)).

[104.](#) *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34 (2d Cir. 1995) (quoting *Oliveri v. Thompson*, 803 F.2d 1266, 1272 (2d Cir. 1986) (quotations omitted)).

[105.](#) *Oliveri*, 803 F.2d at 1273.

[106.](#) *See* Broadvox Mem. at 2-3 (making no mention in the table of contents of any legal basis for sanctions other than section 285).

[107.](#) *See* Springut Sanctions Mem. at 4.

[108.](#) *Id.* at 5.



Case 1:14-cv-02994-JFK   Document 128-12   Filed 11/06/15   Page 22 of 25

Rates Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y., 2004)

[109.](#) *See id.* at 4.

[110.](#) *Id.* at 7.

[111.](#) *See id.* at 5.

[112.](#) *See id.*

[113.](#) *See id.* at 5-6.

[114.](#) *See id.* at 6.

[115.](#) *See id.*

[116.](#) *See id.* at 7.

[117.](#) The Second Circuit has held that "[t]he standard for triggering the award of fees under Rule 11 is objective unreasonableness and is not based on the subjective beliefs of the person making the statement." *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.*, 682 F.3d 170, 177 (2d Cir. 2012) (citations and quotations omitted).

[118.](#) *See* Springut Sanctions Mem. at 6 ("If Rule 11 was too stringent to support [Broadvox's] motion for fees (as conceded by Broadvox), then *a fortiori* Section 1927 and inherent authority are too stringent. Yet, notwithstanding disclaiming reliance on Rule 11, Broadvox invoked the other two bases!").

[119.](#) Springut argues that, in reality, Broadvox merely sought to include Springut in the motion in order to collect against "deep pockets," given that Broadvox had noted that RTI likely had no remaining assets. *See id.* at 5. However, assuming that Broadvox mistakenly, yet not in bad faith, relied upon section 285 as a basis for sanctions against Springut, Broadvox likewise could not have — in bad faith — included Springut in the motion because Broadvox legitimately, although incorrectly, believed that the Court could sanction Springut under section 285.

[120.](#) Springut argues that Broadvox knew that the standards differed from each other, and that Broadvox deliberately conflated the standards in order to "pull the proverbial 'fast one'" on the Court. *Id.* at 7. Springut evidences this argument by pointing to a footnote in which Broadvox admits that Rule 11 has a more stringent standard than section 285, and that therefore Broadvox would not proceed under Rule 11 against Springut (and RTI) — presumably because Broadvox felt that it could not meet the higher Rule 11 standard. *See id.* at 6. Springut then draws the inference that if Broadvox would not proceed under Rule 11, then certainly Broadvox would not proceed under section 1927 and the Court's inherent authority, both of which have standards even more stringent than Rule 11. *See id.* However, if Broadvox truly did not appreciate the differences between the standards under section 285, section 1927, and the Court's inherent authority, then Springut cannot prove that Broadvox's admission of the stringent standard under Rule 11 has any impact on Broadvox's understanding of the standards under section 1927 and the Court's inherent authority.



Case 1:14-cv-02994-JFK Document 128-12 Filed 11/06/15 Page 23 of 25

Rates Tech. Inc. v. Broadvox Holding Co. (S.D.N.Y., 2015)

[121.](#) Springut argues that Broadvox continues to evidence bad faith by conflating the various standards. *See id.* at 7-8. However, I cannot conclude that Broadvox acted in bad faith simply because Broadvox's argument as to the interpretation of the various standards may not prevail on the merits.

[122.](#) *See* Opp. Mem. at 3-5.

[123.](#) *See id.* at 5. *See also supra* note 73.

[124.](#) *See* Opp. Mem. at 5. Springut cites three district court cases to support this proposition. *See Tutor Time Learning Ctrs. v. GKO Group, Inc.*, No. 13 Civ. 2980, 2013 WL 5637676 (S.D.N.Y. Oct. 15, 2013); *Chevron Corp. v. Donziger*, No. 11 Civ. 0691, 2013 WL 4045326, at *1 n.3 (S.D.N.Y. Aug. 9, 2013); *Lyn v. Incorporated Village of Hempstead*, No. 03-CV-5041, 2007 WL 1876502, at *16 n.13 (E.D.N.Y. June 28, 2007).

[125.](#) Counsel's Reply Memorandum of Law in Support of Motion for Sanctions Against Defendants and Their Counsel ("Springut Reply") at 2.

[126.](#) *See id.* at 5.

[127.](#) *See id.*

[128.](#) *See* Broadvox Reply at 1 ("Although RTI's counsel was the active agent for the conduct reflected in the record and was remunerated for those efforts, the proper focus of the action should be the principal/client, RTI, and not its agents.").

[129.](#) Springut argues that Broadvox disingenuously believes that the proper focus should be on RTI, as opposed to Springut. *See* Springut Reply at 4-5. Springut asserts that Broadvox certainly did not think the focus should only be on RTI when Broadvox moved initially for sanctions against both RTI and Springut. *See id.* Springut claims that Broadvox only "conveniently discover[ed]" the proper focus when faced with a Rule 11 motion. *Id.* at 5. However, this argument is speculative. Broadvox could plausibly have had a change of heart, or, more practically, decided that its chances of recovering against Springut were poor and deemed it more appropriate to proceed only against RTI.

[130.](#) *See generally* Springut Withdrawal. Broadvox withdrew its motion as to Springut eleven days after Springut served Broadvox with both an opposition and a Rule 11 motion. *See id.* (dating the Notice of Withdrawal August 1, 2014); *see also* Opp. Mem. (dating the opposition July 21, 2014); Springut Email ("The Rule 11 papers were served on July 21, 2014").

[131.](#) *See* Springut Reply at 7 ("Defendants' [argument that withdrawing the motion should grant it immunity from sanctions] would allow an attorney to burden his adversary with the costs of opposing a frivolous motion brought in bad faith, and then escape sanctions merely by withdrawing the motion before ruled upon.").

[132.](#) Springut Motion at 7.



133. *See id.* at 8.

134. For example, Springut highlights Broadvox's statement that the Court, in a prior opinion, rejected "each and every one" of RTI's proposed claim constructions. *See id.* at 7-8. Springut notes that Broadvox did not in fact prevail on "each and every one," but rather the Court adopted two of RTI's proposed claim constructions out of fourteen disputed terms. *See id.* at 7; *see also Broadvox II*, 2014 WL 323256, at *1. This "misrepresentation," as Springut labels it, constitutes the most egregious statement by Broadvox. Nonetheless, it falls short of proving bad faith.

135. *See* Springut Motion at 9.

136. Springut in fact set the briefing schedule for Broadvox's motion, as well as contacted the Court several times before filing its opposition. *See generally* 6/27/14 Letter from Tal S. Benschar, counsel for Springut and former counsel for RTI, to the Court, Dkt. No. 151; *see also generally* 7/14/14 Letter from Tal S. Benschar to the Court, Dkt. No. 153; 7/18/14 Notice of Change of Address, Tal S. Benschar, Dkt. No. 155; 7/18/14 Notice of Change of Address, Milton Springut, Dkt. No. 156. Thus, in any of those instances, Springut could have raised the issue of whether Broadvox's motion had a legitimate legal basis, but deliberately chose not to.

137. *See* Springut Reply at 7 (citing *Star Mark*, 682 F.3d at 176). *See also supra* note 53.

138. Springut Reply at 7.

139. I do not consider whether RTI's conduct meets the standards under section 1927 or the Court's inherent authority because Broadvox failed to include those legal bases in its Notice of Motion as required under Local Civil Rule 7.1(a)(1). *See supra* note 73.

140. *Highmark*, 687 F.3d at 1310 n.1 (emphasis added).

141. *See* Broadvox Mem. at 9-14.

142. *See supra* Part II.C.

143. *See id.*

144. *See supra* note 52.

145. *See supra* note 54.

146. *See* Broadvox Mem. at 16-17, 25-27.

147. For example, Broadvox, in its moving papers, argues that one of RTI's patents requires both "a housing *and* a disconnection from a telephone jack" and that "Broadvox's systems demonstrably did not have either of these." Broadvox Mem. at 27. However, Broadvox provides neither a citation to the record nor to documentary evidence. A review of the record confirms that Broadvox has not proffered any such evidence in this case.

148. *See generally Broadvox II*.



149. *See generally* Plaintiff Rates Technology Inc.'s Opening Claim Construction Brief [Dkt. No. 73]. I also found merit to RTI's case law application at the *Markman* hearing. *See* Markman Tr. at 10:14-15 ("Your discussion of means plus function, the cases seem to support much of what you said. I have no problem with that.").

150. *See* Broadvox Mem. at 22-23; *see also supra* Part II.B (detailing RTI's business).

151. Broadvox also argues that RTI has a history of bringing suit, draining its opponent's financial resources, and then defaulting on its own legal fees, as has happened in this case. *See* Broadvox Mem. at 22-23. However, I do not find that RTI intended, from the outset, not to pay its legal fees. Broadvox evidences RTI's history of not paying legal fees by citing to a complaint from over ten years ago. *See id.* Moreover, Springut, in its complaint against RTI for unpaid legal fees, admits that RTI did in fact pay Springut for a portion of the suit. *See* Copy of Summons and Complaint, Ex. A to Declaration of Milton Springut, at 4. Thus, Broadvox offers nothing other than speculation that RTI never intended to pay its legal fees in this case.

152. *See* Broadvox Mem. at 20-21.

153. *See generally* 12/16/13 Letter from Springut to Gertsburg, Ex. A-8 to Gertsburg Decl.

154. *See* Broadvox Mem. at 21.

155. *See id.*

156. *See Octane Fitness*, 134 S. Ct. at 1756.

157. While Weinberger's pre-suit conduct certainly exceeded the bounds of commonplace ethical behavior, his status as a non-attorney precludes the finding of any professional conduct violation. *See, e.g.*, New York Rules of Professional Conduct, N.Y.C.R.R. § 1200.00 R. 4.1 (truthfulness in statements to others); ABA Ethical Guidelines for Settlement Negotiations R. 4.1.1 (false statements of material fact). Furthermore, with respect to Weinberger's statements that litigating this case would impose substantial costs on Broadvox, the ABA notes that "[i]t is . . . proper to remind the opposing party of the ordinary costs of proceeding to trial and to suggest that it may be in the opposing party's interest to avoid these costs by agreeing to a settlement." *Id.* at R. 4.3.2 committee note.

--------

