UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PATRICIO JIMENEZ,

                        Plaintiff,

- against -

THE CITY OF NEW YORK, DETECTIVE JAMES QUILTY, DETECTIVE MIGUEL LOPEZ, and JOHN/JANE DOE #1,

                        Defendants.

No. 14 Civ. 2994 (SAS)

---

**DEFENDANTS' REPLY IN SUPPORT OF
THEIR MOTION FOR ATTORNEYS' FEES AND SANCTIONS**

Defendants City of New York, Detective James Quilty, and retired Detective Miguel Lopez (collectively, "Defendants"), by their attorney, Zachary W. Carter, Corporation Counsel of the City of New York, respectfully submit this reply in further support of their motion for attorneys' fees and sanctions. As set forth below, Plaintiff's Opposition, ECF No. 129 ("Pl.'s Opp.") sets forth no compelling legal grounds to deny Defendants' motion; nor does the lengthy declaration by Plaintiff's counsel set forth good cause for the lamentable manner in which this litigation was conducted.

**POINT I
DEFENDANTS' MOTION WAS TIMELY**

Plaintiff's assertion that Defendants' motion was "untimely given that it was filed on October 9, 2015[,]" Pl.'s Opp. at 2, defies the plain language of the applicable rule, which requires that such a motion be filed "no later than 14 days after the entry of judgment." Fed. R. Civ. P. 54(d)(2)(B)(i). "Because the 14-day period established by Rule 54(d)(2)(B) for the filing of a motion for attorneys' fees was introduced in large part to avoid piecemeal appeals of merits and fee questions, that 14-day period begins to run with the entry of a final judgment." Weyant

1

v. Okst, 198 F.3d 311, 315 (2d Cir. 1999).  See also Fed. R. Civ. P. 58(a) ("Every judgment and amended judgment must be set out in a separate document[.]").   Final Judgment in this case was entered on Friday September 25, 2015.  See Judgment, ECF No. 123.  Defendants' motion was filed 14 days later, on Friday October 9, 2015.

Plaintiff's creative arguments notwithstanding, it was the clerk's entry of final judgment on September 25, 2015, (see ECF No. 123), and not the Court's Opinion and Order one day earlier, that "trigger[ed] the 14-day filing period set by Rule 54(d)(2)(B)."  Weyant, 198 F.3d at 314 (citing 1993 Advisory Committee Notes to Fed. R. Civ. P. 54).  The case on which Plaintiff principally relies, Ritani, LLC v. Aghjayan, is inapposite since (1) it sought fees on a copyright claim that was dismissed at the pleading stage; and (2) the fee motion was denied on the grounds that the movants were not "prevailing parties" under the applicable fee statute, and any discussion regarding the timing of that motion was therefore entirely dicta.  See 970 F. Supp. 2d. 232, 266-67 (S.D.N.Y. 2013) (Sweet, J.) (prefacing the discussion cited by Plaintiff with "even assuming that Defendants are the 'prevailing party'. . . .").

In any event, even if the Court were to agree with Plaintiff's absurd reading of Rule 54(d)(2)(B), it has the discretion to retroactively extend the Defendants' filing deadline, provided any failure to adhere was the result of "excusable neglect." See Tancredi v. Metro. Life Ins. Co., 378 F.3d 220, 226-227 (2d Cir. 2004) (citing Fed. R. Civ. P. 6(b)(2)).  Insofar as Defendants operated on a good faith belief that the "judgment" referred to in Rule 54(d)(2)(B)(i) means the actual final judgment entered by the clerk, the Court should excuse any mistake of law by Defendants, and accept the motion as timely, particularly in light of the absence of any prejudice to Plaintiff.

There is no merit to Plaintiff's contention that Defendants' motion was untimely.

**POINT II**
**PLAINTIFF'S ABILITY TO PAY IS RELEVANT ONLY TO THE MAGNITUDE OF AN AWARD, NOT WHETHER DEFENDANTS ARE ENTITLED TO ATTORNEYS' FEES**

Plaintiff claims, in his opposition, that he does not have the financial wherewithal to pay the attorneys' fees accrued by Defendants' in this action, and argues that this is a basis for denying Defendants' fee application in its entirety. See Pl.'s Opp. at 3.[1] However, while the Court can take Plaintiff's ability to pay into consideration when determining the **magnitude** of any fee award, it should not affect a determination of whether Defendants are indeed entitled to recover any fees. See, e.g., Conley v. KFC Corp., 622 F. Supp. 767, 768 (W.D. Ky. 1985) (awarding fees against defendants who had already declared bankruptcy). Even in the cases cited by Plaintiff, the non-moving parties' ability to pay was considered as a factor of the amount of an award, not as grounds for denying recovery altogether. See Shangold v. Walt Disney Co., 275 Fed. App'x 72, 74-75 (2d Cir. 2008); Nature's Enters., Inc. v. Pearson, No. 08 Civ. 8549 (JGK) (THK), 2010 U.S. Dist. LEXIS 11306, at *35-36 (S.D.N.Y. Jan. 11, 2010) (quoting Penguin Books U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd., No. 96 Civ. 4126 (RWS), 2004 U.S. Dist. LEXIS 5648, 2004 WL 728878, at *5 (S.D.N.Y. Apr. 6, 2004) ("financial disparities may be a factor considered in determining the magnitude of an award once it has been resolved that such an award is appropriate.")).

In addition to seeking attorneys' fees from Plaintiff directly, Defendants' are also requesting that Plaintiff's counsel be held jointly and severally liable as a sanction for conduct in this litigation. To the extent the Court deems sanctions are appropriate but that Plaintiff lacks the

---

[1] Defendants note that Plaintiff has not submitted a declaration, tax records, or any other form of admissible evidence regarding his financial resources. Instead, Plaintiff's claim relies wholly on an incomplete document from nearly three years ago containing hearsay statements about Plaintiff's employment and income. See Pl.'s Opp. at 3 (citing "Criminal Justice Agency Report" attached to Mouton Decl. as Exhibit 4).

3

financial ability to pay the full award, it can and should apportion any award against Plaintiff and Plaintiff's counsel based on their individual abilities to pay, and not excuse Plaintiff's counsel from paying an award on the basis of his client's relative poverty.  Cf. Sassower v. Field, 973 F.2d 75, 81 (2d Cir. 1992) (upholding total fee award against party with means to pay, but vacating imposition of joint and several liability and remanding for individualized assessment as against the party of more modest economic means).

**POINT III
PLAINTIFF'S COUNSEL'S EXPLANATIONS
DO NOT ADEQUATELY EXCUSE HIS SANCTIONABLE CONDUCT**

Plaintiff's counsel submits an declaration purporting to excuse his conduct in bringing and maintaining this lawsuit.  See generally Declaration of Gregory P. Mouton, dated November 6, 2015 (ECF No. 128) ("Mouton Decl.").  While that declaration attempts to chip away at specific instances of sanctionable conduct described in Defendants' moving papers, it nowhere adequately explains the decision to file a lawsuit based entirely on the premise of an alleged conspiracy that the Court found "simply too fantastic to be credible."  Opinion and Order, dated September 9, 2015 ("S.J. Op."), at 21 (ECF No. 122).

Notably, neither Plaintiff nor Mrs. Jimenez has ever specifically denied the **accuracy** of the notes and affidavit prepared by Hannah Cohen, the volunteer advocate who interviewed Mrs. Jimenez in the hospital on the night of the assault, and who recorded the details of the assault.  See Defs.' S.J. Reply (ECF No. 120, filed under seal) at 5-6.  Unable to directly refute that document, which contains highly personal information that could only have come from Mrs. Jimenez, Plaintiff's counsel instead speculates at length about possible problems with language services at Harlem Hospital.  See Mouton Decl. at ¶ 12.  However, the entirety of that discussion is just that – speculation – since Plaintiff conducted no discovery into the availability of Spanish interpreters at Harlem Hospital, choosing instead to rely on what appears to be the results of a

belated web search, including documents that have absolutely nothing to do with any party in this case. See Mouton Decl. at n.3 and Exhibit 5, thereto. Setting aside speculation by Plaintiff's counsel, the Court is left with only his unsupported statements that Mrs. Jimenez was not provided adequate language services at Harlem Hospital; not even Mrs. Jimenez's summary judgment affidavit repeats that allegation. There is absolutely no evidence (admissible or not) anywhere in the record of this case to support the repeated complaints that Mrs. Jimenez, a native Spanish speaker, was unable to effectively communicate with anyone at Harlem Hospital, a Level 1 Trauma Center servicing some of the most heavily Hispanic neighborhoods in New York City. On the contrary, the evidence suggests just the opposite. See, e.g., Catalano Decl., at Exhibit D (ECF Nos. 19-4 & 39-4, now under seal) (medical records from Harlem Hospital explicitly noting that Mrs. Jimenez's "Preferred Language" was "Spanish", and that the "Communication Method" was "Direct Communication in Patient's Primary Language").[2] In any event, any reasonably diligent investigation into the facts of this case would have established the inescapable truth that Mrs. Jimenez reported the domestic assault to numerous people on the

---

[2] Plaintiff's counsel misrepresents the prior record to make it seem as if Thomas Catalano, Esq., the attorney for Mt. Sinai Group, "confirmed that there should have been an interpreter at the hospital at all times, but that there was not one." Mouton Decl. at ¶ 11, n.1 (citing 12/15/14 Conf. Tr. (ECF No. 75) at 13:11-14:03). First, there is no explanation as to why a statement by an attorney for **Mt. Sinai Hospital** has any bearing on events that occurred at **Harlem Hospital**. See 12/15/14 Conf. Tr. at 15:15-21 (Mr. Catalano explaining that Mrs. Jimenez was never at Mt. Sinai, the hospital operated by his client). But even if Mr. Catalano was an appropriate witness to discuss language services at Harlem Hospital, reading just a few lines past the portion of the record cited by Plaintiff's counsel reveals that Mr. Catalano was merely offering his interpretation of a statute, and that he believed that the Cyracom telephone service satisfied any legal requirement to make language services available. See 12/15/14 Conf. Tr. at 14:02-10. Given this sort of hyper-selective citation, it is ironic that Plaintiff's counsel accuses Defendants of "cherry picking" from the record of the case. Mouton Decl. at ¶ 29. See also, Defs.' Local Rule 56.1 Reply (ECF No. 117) at ¶ 85 (noting another gross distortion through highly selective citation to a deposition transcript).

night that it happened, including the Emergency Medical Technicians that first responded to her home and transported her to Harlem Hospital.  See generally Defs.' S.J. Reply at 4-6.

Defendants stand by the examples of Plaintiff's counsel's harassing and vexatious litigation tactics set forth in their opening brief.  The response to those examples appears to be largely an attempt to deflect blame for the sanctionable conduct onto Defendants and the Office of Corporation Counsel.  See, e.g., Mouton Decl. at ¶¶ 13-15 (misstating the history of an unrelated case against the NYPD as justification for accepting Plaintiff's and Mrs. Jimenez's implausible allegations at face value); id. at n.10 (claiming that Plaintiff's counsel's abusive discovery practices are necessitated by the "conduct" of the Office of Corporation Counsel).  Contrary to Mr. Mouton's declaration, the Defendants never "paid sanctions in the form of costs" in this case.  Mouton Decl. at note 8.  Rather, without the Court's intervention, Defendants elected to pay the $95 court reporter fee on a busted deposition.  That was a tactical decision aimed at avoiding an unnecessary and distracting dispute during summary judgment briefing and, while agreeing to reimburse Plaintiff's counsel, Defendants expressly denied that they had any obligation to do so.  See Email from T. Zimmerman dated June 17, 2015, attached hereto as Exhibit "A".  The only thing this anecdote proves is that Defendants have gone out of their way to avoid burdening the Court with unnecessary and petty disputes in order to focus on bringing this frivolous case to an end as swiftly as possible.

Plaintiff's counsel specifically asks the Court to consider that "Mr. and Mrs. Jimenez, educated in their home country of Mexico, have no more than a sixth grade education."  Mouton Decl. at ¶ 19; see also, Pl.'s Opp. at 3.  As such, it appears that Mr. and Mrs. Jimenez are and were totally dependent on the advice and guidance of their attorney when making decisions regarding this lawsuit.  To the extent that anyone engaged in this litigation as a "sport," or

viewed a civil rights claim against the City of New York as a "lottery", S.J. Op. at 22, the Court can and should infer that the impetus to do so came from Plaintiff's counsel, rather than from the Plaintiff and Mrs. Jimenez. In addition to taxing the City's time and resources, Plaintiff's counsel also abused this Court's jurisdiction and wasted scarce judicial resources by bringing and vexatiously pursuing this frivolous litigation.

As such, Plaintiff's counsel should be held at least as culpable, if not more, than Plaintiff himself.

### POINT IV
### DEFENDANTS' FEE APPLICATION IS REASONABLE
### IN LIGHT OF THE HISTORY OF THE LITIGATION

Plaintiff nitpicks various perceived deficiencies in the billing records submitted by Defendants in support of their fee application. Significantly, Plaintiff does **not** challenge the requested blended rate of $350/hr for the attorneys who worked on the case, and that rate should be applied. Plaintiff's objections to the specific billing entries are without merit.

For example, while Plaintiff complains about time billed after the Court issued its Opinion and Order on Summary Judgment on September 24, 2015, he cites no authority for the proposition that recoverable fees should be capped by the issuance of such an order. Indeed, plaintiffs' counsels frequently seek and are awarded fees for time expended on post-judgment activities, such as applications for costs and attorneys' fees under 42 U.S.C. § 1988. See, e.g., Greene v. City of New York, No. 12 Civ. 6427 (SAS), 2013 U.S. Dist. LEXIS 154342, at n.63 and accompanying text (S.D.N.Y. Oct. 25, 2013). Plaintiff's counsel also asserts that entries categorized as time spent on "document retrieval" reflect work "more suited to a messenger or assistant." Pl.'s Opp. at 6. However, "document retrieval" in this context indicates attorney-client communications regarding the existence and availability of documents demanded in discovery. To the extent Plaintiff complains about the great deal of time spent by Defendants'

counsel interfacing with the New York City Police Department for the purpose of chasing down and obtaining documents (or, more frequently, confirming that those documents either did not exist or contained no relevant information), he should focus blame on Plaintiff's counsel, whose discovery practices were the direct cause of that expenditure of time and energy by Defendants' counsel.

Plaintiff's counsel does not proffer for comparison any indication of his own activities on this case.  Compare Greene, supra, at n.62 and accompanying text.  It would be reasonable to expect the parties' respective attorneys' time to be at least approximately equal, although the unequal burdens that discovery imposes on municipal defendants in § 1983 actions makes it much more likely that defense counsel expended a higher total number of hours.  Despite that reality, and contrary to Plaintiff's profession of shock at the size of Defendants' application for fees incurred over sixteen months of litigation, Defendants can state with assurance that, were the circumstances reversed, Plaintiff's counsel would be cheerfully advancing an application for attorneys' fees much larger than what Defendants have submitted.

Defendants are confident that, using the submitted records and its own extensive experience, the Court can assess a fair and reasonable value for the work performed by Defendants' counsel in this case.

## **CONCLUSION**

Neither Plaintiff nor Plaintiff's counsel has rebutted Defendants' right to recover their attorneys' fees in this case, both as the "prevailing party" under 42 U.S.C. § 1988, and also as a sanction for Plaintiff's counsel's vexatious and harassing conduct in this litigation. Defendants respectfully request that the Court grant Defendants' motion, and such other and further relief as the Court deems appropriate.

Dated:  New York, New York  
        November 20, 2015

**ZACHARY W. CARTER**  
Corporation Counsel of the City of New York  
*Attorney for Defendants City of New York, Quilty,*  
    *and Lopez*  
100 Church Street  
New York, New York 10007  
(212) 356-2661

By: _____  
    Tobias E. Zimmerman  
    *Senior Counsel*  
    Special Federal Litigation Division

cc:    Gregory P. Mouton, Jr., Esq. (**via ECF**)  
        *Attorney for Plaintiff*