UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
PATRICIO JIMENEZ                    Docket No. 14-cv-2994 (SAS)

                Plaintiff

                                    AMENDED
        -against-                   NOTICE OF APPEAL


THE CITY OF NEW YORK, DETECTIVE
JAMES QUILTY, DETECTIVE MIGUEL
LOPEZ, and JOHN/JANE DOE #1,

Defendants

----------------------------------X

        PLEASE TAKE NOTICE that the plaintiff Patricio Jimenez and
his attorney, Gregory P. Mouton, hereby appeal to the United
States Court of Appeals for the Second Circuit from an order of
the District Court, Southern District of New York (Scheindlin,
J.), dated and entered December 9, 2015. The plaintiff and Mr.
Mouton appeal from each and every part of said order which is
adverse to them.


                        Yours, etc.,
                        Gregory P. Mouton, Jr., Esq.
                        The Law Office of Gregory P. Mouton, Jr.
                        305 Broadway, 14th Floor
                        New York, NY 10007
                        (646) 706-7481


                                1

By: _____

Brian J. Isaac, Esq.
POLLACK, POLLACK, ISAAC & DE CICCO
225 Broadway, Suite 307
New York, New York 10007
212-233-8100
bji@ppid.com


Dated:      January 7, 2016
            New York, New York

To:

CLERK OF THE COURT USDC/SDNY

Tobias E. Zimmerman
Senior Counsel
City of New York Law Department
100 Church Street
New York, NY 10007
(212) 356-2661

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/9/15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------- X

**PATRICIO JIMENEZ,**

      **Plaintiff,**

      **- against -**

**THE CITY OF NEW YORK, DETECTIVE**
**JAMES QUILTY, DETECTIVE MIGUEL**
**LOPEZ, and JOHN/JANE DOE #1,**

      **Defendants.**

-------------------------------------------------------- X

**OPINION AND ORDER**

**14-cv-2994 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

**I. INTRODUCTION**

On September 24, 2015, this Court granted defendants' motion for

summary judgment in this action brought under section 1983 of Title 42 of the

United States Code. Defendants now move for attorneys' fees under section 1988

of Title 42 of the United States Code, and for sanctions against plaintiff's counsel

pursuant to Rule 56(h) of the Federal Rules of Civil Procedure, section 1927 of

Title 28 of the United States Code, and this Court's inherent powers to supervise

and control its own proceedings. For the reasons described below, defendants'

motion is GRANTED in part.

-1-

## II. BACKGROUND

Plaintiff and his wife, Mrs. Maribel Mosso-Gonzalez Jimenez, commenced this action on April 28, 2014, alleging false arrest, denial of substantive due process, malicious abuse of process, and related claims stemming from plaintiff's arrest on January 30, 2013.

### A. Mrs. Jimenez's Hospitalization and Mr. Jimenez's Arrest

In the early morning hours of December 26, 2012, plaintiff's wife Maribel Jimenez was taken to Harlem Hospital by ambulance.[1] Staff at Harlem Hospital called the police,[2] and Officer Matthew Weinbel responded.[3] Officer Weinbel generated a Domestic Incident Report and a Complaint Report indicating that Mrs. Jimenez had reported being a victim of a domestic assault by her husband.[4] On December 27, 2012, Detective James Quilty was assigned to investigate the alleged assault.[5]

On January 21, 2013, Detective Quilty met with Mrs. Jimenez at her

---

[1] *See* Defendants' Statement of Undisputed Material Facts Pursuant to Rule 56.1 ("Def. 56.1") ¶ 1.

[2] *See id.* ¶ 2.

[3] *See* Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ("Pl. 56.1") ¶ 25.

[4] *See id.* ¶¶ 26-27.

[5] *See* Def. 56.1 ¶ 4.

home, accompanied by Detective Miguel Lopez.[6] Detective Quilty completed a Complaint Follow Up Informational Report ("DD5") after that interview.[7] The DD5 contained details of the alleged assault, which Detective Quilty indicated were recounted to him by Mrs. Jimenez.[8]

On January 30, 2013, Mrs. Jimenez appeared at the police precinct with her husband. At the precinct, Mrs. Jimenez told Detective Quilty that her husband had not assaulted her,[9] and maintained that she never reported a domestic assault to anyone. Detective Quilty then placed Mr. Jimenez under arrest. Detective Quilty signed a Criminal Court Complaint against Mr. Jimenez that same day, and Mr. Jimenez was arraigned in New York County Criminal Court on January 31, 2013.[10] On March 7, 2013, the criminal case against Mr. Jimenez was dismissed on motion of the District Attorney for lack of evidence sufficient to prove the case beyond a reasonable doubt.[11]

---

[6]     *See id.* ¶ 5.

[7]     *See* Pl. 56.1 ¶ 10.

[8]     *See id.* ¶ 80.

[9]     *See* Defendants' Reply to Plaintiff's Statement of Undisputed Material Facts Pursuant to Local Rule 56.1 ¶ 60.

[10]    *See* Pl. 56.1 ¶¶ 66-67.

[11]    *See id.* ¶¶ 71-72.

-3-

## B. Documentary Evidence

A number of documents in the record, prepared by disinterested medical and healthcare professionals, indicated that Mrs. Jimenez had in fact reported a domestic assault on December 26, 2012.

### 1. The Ambulance Report

The emergency medical technician who transported Mrs. Jimenez to Harlem Hospital on December 26, 2012, completed a standard FDNY Prehospital Care Report (the "Ambulance Report") that same day.[12] In the report, the technician noted specific details of an alleged assault: "her husband was drinking . . . goes up to her [and] puts her arms behind her back and smacks her multiple times."[13] The technician listed the presumptive diagnosis as "Poss. Domestic Violence."[14]

### 2. The Hospital Records

The Harlem Hospital Emergency Department triage records created upon Mrs. Jimenez's arrival at Harlem Hospital note that "patient was in

---

[12]    *See* FDNY Prehospital Care Report, Ex. M to 8/25/15 Declaration of Tobias E. Zimmerman in Support of Defendants' Motion for Summary Judgment, at 1.

[13]    *Id.* at 2.

[14]    *Id.*

-4-

altercation with her domestic partner and now complains of right shoulder, forearm, and wrist pain."[15]

### 3. Hannah Cohen's Affidavit

Hannah Cohen, a volunteer advocate with the Mt. Sinai Sexual Assault and Violence Intervention Program, met with Mrs. Jimenez at Harlem Hospital on the night she was hospitalized. Cohen has submitted an affidavit in which she attests to a "specific recollection of speaking with Mrs. Jimenez through a Spanish interpreter."[16] Cohen testified that "Mrs. Jimenez informed me, in no uncertain terms, that she was assaulted by her domestic partner, Mr. Jimenez."[17]

### 4. Cohen's Advocate Report Form

The defendants have also produced Cohen's Advocate Report Form, which she testified was written entirely by her.[18] In this report, completed on December 26, 2012, Cohen wrote "Boyfriend came home after drinking. He pulled her hair and she fought back to defend herself. He twisted her arm back.

---

[15] Harlem Hospital Center Triage Note, Ex. D to 6/20/14 Declaration of Thomas Catalano in Support of Motion to Dismiss ("Catalano Aff."), at 3.

[16] 6/20/14 Declaration of Hannah Cohen in Support of Motion to Dismiss ¶ 6.

[17] *Id.* ¶ 11.

[18] *See id.* ¶ 5.

One of her three daughters found her in the bathroom and called 911."[19]

## C. Summary Judgment

After eighteen months of litigation, several rounds of amendment to the Complaint, a motion to dismiss the Complaint resulting in the dismissal of several parties and certain of plaintiff's claims, and the close of fact discovery, the Court held a premotion conference to discuss defendants' intended motion for summary judgment. It was clear from the record that the only evidence supporting plaintiff's claims was Mrs. Jimenez's assertion that she had never reported an assault to anyone.[20] This Court noted the apparent, overwhelming weight of the evidence contradicting this claim, and explicitly admonished plaintiff's counsel that an untruthful affidavit from Mrs. Jimenez — who had not been deposed during fact discovery — would be dealt with appropriately.[21]

On September 24, 2015, this Court granted defendants summary judgment on all claims (the "September 24 Opinion"). As expected, the only piece of evidence supporting plaintiff's version of events was an affidavit prepared by

[19] Advocate Report Form, Ex. C to Catalano Aff., at 3.

[20] *See* Transcript of 6/18/15 Conference at 11:18-12:22.

[21] *See id.* at 18:13-21. Defendants noted that they declined to depose Mrs. Jimenez to avoid placing the victim of a domestic assault in a position to commit perjury. *See id.* at 18:9-12.

-6-

plaintiff's counsel and signed by Mrs. Jimenez in which she certified her claims that she had never reported the well-documented assault to anyone — not the emergency medical technician, not the Harlem Hospital Emergency Department, not the volunteer advocate, and certainly not the police. This affidavit, and the motiveless conspiracy between police officers, medical professionals, and domestic violence advocates to fabricate an assault charge in order to arrest her husband that it alleged, were both too fantastic to be credible.[22] Furthermore, given the previous assertions made by plaintiff in his pleadings — including assertions regarding the nature of Detective Quilty's interview that could only have come from Mrs. Jimenez — that were contradicted by Mrs. Jimenez's affidavit, I considered (and still consider) it very likely that Mrs. Jimenez committed perjury.[23] The Clerk of the Court entered a final judgment in this case on September 25, 2015, and defendants filed this motion fourteen days later, on October 9, 2015.

## III. APPLICABLE LAW

### A. Attorneys' Fees Under 42 U.S.C. § 1988

Section 1988 provides that "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of

---

[22] *See Jimenez v. City of New York*, No. 14 Civ. 2994, 2015 WL 5638041, at *6 (S.D.N.Y. Sept. 24, 2015).

[23] *See id.* at *7.

the costs."[24] The Supreme Court has held that prevailing defendants in civil rights actions are entitled to recovery attorney's fees "upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation."[25] Granting defendants' request for fees under section 1988 does not require a finding that plaintiff acted in bad faith by bringing or pursuing his action.[26]

**B. Sanctions Under Rule 56(h)**

Rule 56(h) states, in full:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court — after notice and a reasonable time to respond — may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result. An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

The rule does not define the scope of "bad faith;" however, courts have found bad faith under Rule 56(h) where an attorney's conduct was "'egregious,' such as 'where affidavits contained perjurious or blatantly false allegations or omitted facts concerning issues central to the resolution of the

---

[24]    42 U.S.C. § 1988(b).

[25]    *Fox v. Vice*, 131 S.Ct. 2205, 2213 (2011) (quotations omitted).

[26]    *See Davidson v. Parshall*, 740 F.2d 129, 132-33 (2d Cir. 1984).

case."<sup>27</sup>

## C. Sanctions Under 28 U.S.C. § 1927 and the Court's Inherent Authority

Apart from Rule 56(h), two additional bases for sanctions exist. *First*, under section 1927, a court may require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."[28] *Second*, a court "may exercise its inherent power to sanction a party or an attorney who has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'"[29]

To impose either of these sanctions, "a court must find clear evidence that (1) the offending party's claims were entirely without color, and (2) the claims were brought in bad faith — that is, 'motivated by improper purposes such as

---

[27]     *Stern v. Regency Towers, LLC*, 886 F. Supp. 2d 317, 327 (S.D.N.Y. 2012) (quoting *Jaisan, Inc. v. Sullivan*, 178 F.R.D. 412, 415-16 (S.D.N.Y. 1997)). *Accord Luscier v. Risinger Bros. Transfer, Inc.*, No. 13 Civ. 8553, 2015 WL 5638063, at *8-*10 (S.D.N.Y. Sept. 17, 2015).

[28]     28 U.S.C. § 1927.

[29]     *Ransmeier v. Mariani*, 718 F.3d 64, 68 (2d Cir. 2013) (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

harassment or delay.'"³⁰ A claim entirely without color "lacks any legal or factual basis."³¹ A colorable claim, however, "has some legal and factual support, considered in light of the reasonable beliefs of the individual making the claim."³² To establish bad faith, sanctions under section 1927 and a court's inherent authority require a similar showing — "bad faith may be inferred 'only if actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'"³³ Moreover, "[t]he court's factual findings of bad faith must be characterized by 'a high degree of specificity.'"³⁴

        In practice, sanctions under section 1927 and sanctions pursuant to a court's inherent authority materially differ only in that "awards under [section] 1927 are made only against attorneys or other persons authorized to practice before

---

³⁰   *Eisemann v. Greene*, 204 F.3d 393, 396 (2d Cir. 2000) (quoting *Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)).

³¹   *Sierra Club v. United States Army Corps of Eng'rs*, 776 F.2d 383, 390 (2d Cir. 1985) (citing *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980)).

³²   *Nemeroff*, 620 F.2d at 348.

³³   *Schlaifer Nance*, 194 F.3d at 336 (quoting *Shafii v. British Airways, PLC*, 83 F.3d 566, 571 (2d Cir.1996) (quotations omitted)).

³⁴   *Milltex Indus. Corp. v. Jacquard Lace Co.*, 55 F.3d 34 (2d Cir. 1995) (quoting *Oliveri v. Thompson*, 803 F.2d 1266, 1272 (2d Cir. 1986) (quotations omitted)).

the courts while an award made under the court's inherent power may be made against an attorney, a party, or both."[35]

## IV. DISCUSSION

### A. Timeliness of Motion

Plaintiff argues that defendants' motion, filed fourteen days after the Clerk of the Court entered its judgment in this case, is untimely. Plaintiff is correct. Rule 54 of the Federal Rules of Civil Procedure provides that a "'[j]udgment' as used in these rules includes a decree and any order from which an appeal lies." It is only a "final judgment" that triggers the fourteen-day filing period set by Rule 54(d)(2)(B). A judgment is considered final if it "conclusively determines the rights of the parties to the litigation and leaves nothing for the court to do but execute the order."[36] It is therefore the order of this Court, not the administrative judgment of the Court's clerk, that serves as a final judgment for purposes of Rule 54.[37] The September 24 Opinion disposed of all claims in the

[35] *Oliveri*, 803 F.2d at 1273.

[36] *Weyant v. Okst*, 198 F.3d 311, 314 (2d Cir. 1999) (citing *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978)).

[37] *See Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 266-67 (S.D.N.Y. 2013) (holding that the fourteen-day window for a Rule 54 motion began upon entry of court's opinion and order). *Cf. United States v. F. & M. Schaefer Brewing Co.*, 356 U.S. 227, 232 (1958) ("[I]t is necessary to determine whether the language of the opinion embodies the essential elements of a judgment . . . and

-11-

case and triggered the fourteen-day window to file a motion under Rule 54, which closed on October 8, 2015. Defendants filed this motion on October 9, 2015.

It is, however, within my discretion to retroactively extend the filing deadline of this Rule 54 motion upon finding defendants' failure to timely file was the result of excusable neglect.[38] To determine whether a party's neglect is excusable, the Second Circuit directs district courts to examine "(1) the danger of prejudice to the opposing party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, including whether it was in the reasonable control of the movant, and (4) whether the movant acted in good faith."[39]

Defendants' filing of this motion was based on the good faith (albeit substantively incorrect) belief that the "judgment" referred to in Rule 54(d)(2)(B)(i) meant the clerk's judgment closing the case, and not this Court's September 24 Opinion. The motion was filed one day after the close of the fourteen day window, creating neither prejudice to the plaintiff nor a significant

clearly evidences the judge's intention that it shall be his final act in the case. . . . When all of these elements clearly appear final judgment has been both pronounced and entered, and the time to appeal starts to run . . . .").

[38] *See Tancredi v. Metropolitan Life Ins. Co.*, 378 F.3d 220, 226 (2d Cir. 2004).

[39] *Id.* at 228 (quotation omitted).

impact on this Court's proceedings. This is quintessential excusable neglect. I therefore retroactively extend defendants' filing deadline by one day as per Rule 6(b) of the Federal Rules of Civil Procedure, and deem this motion timely filed.

## B. Attorneys' Fees Against Plaintiff

Defendants argue that they should be awarded attorneys' fees under section 1988 because plaintiff's case "at the very least . . . was unreasonable and without foundation, if not patently frivolous."[40] I agree. From the commencement of this action, plaintiff presented a set of facts at odds not only with the account of the New York City Police Department, but with an array of individuals who interacted with and treated Mrs. Jimenez on the night of December 26, 2012. This version of events was supported only by Mrs. Jimenez's affidavit, which this Court discounted as too fanciful to be believed in granting defendants' motion for summary judgment. Therefore, against the overwhelming evidence that his wife

---

[40]      10/9/15 Memorandum of Law in Support of Defendants' Motion for Attorneys' Fees and Sanctions ("Def. Mem.") at 4. Plaintiff does not respond to the substance of defendants' argument in his opposition, which only addresses the timeliness of defendants' motion, raises plaintiff's lack of financial resources, and then argues for a substantial reduction in fees based on an analysis of defendants' fee application. *See* 11/6/15 Memorandum of Law in Opposition to Defendants' Motion for Attorneys' Fees and Sanctions ("Pl. Mem.") at 1-6. The remainder of plaintiff's opposition, along with the entirety of a supporting affidavit from plaintiff's counsel, is solely devoted to rebutting defendants' arguments for sanctions. *See id.* at 6-7, 11/6/15 Declaration of Gregory Mouton in Opposition to Defendants' Motion for Attorneys' Fees and Sanctions ("Mouton Aff.").

did, indeed, report a domestic assault both to the police and to medical professionals, plaintiff brought and maintained this suit with the intention of relying solely on the patently unbelievable recantation testimony of his wife. Plaintiff's claims were meritless from the beginning — an award of attorneys' fees is appropriate.

Plaintiff argues that even if I determine defendants are entitled to fees, I should decline to grant fees due to plaintiff's relative poverty, and concomitant inability to pay any fee award assessed.[41] The Court is indeed permitted to take plaintiff's ability to pay into consideration when determining the magnitude of any fee award,[42] and these considerations do inveigh against the levying of defendants' full fee request in this case. Plaintiff is a cook at Cipriani, where he makes approximately six hundred dollars per week in take-home pay.[43] His family has no other means of financial support.[44] It is unlikely plaintiff would be able to withstand the financial stress of the near $100,000 fee award requested by

---

[41]  *See* Pl. Mem. at 3.

[42]  *See, e.g., Shangold v. Walt Disney Co.*, 275 Fed. App'x 72, 74 (2d Cir. 2008) ("We have noted . . . that fee awards are at bottom an equitable matter, [and] courts should not hesitate to take the relative wealth of the parties into account.") (quotation omitted).

[43]  *See* Pl. Mem. at 3.

[44]  *See id.*

-14-

defendants.

This does not mean defendants are entitled to nothing. While the Court is not unsympathetic to plaintiff's financial situation, "litigation is not a sport; litigation is not a lottery."[45] Defendants deserve to recover some portion of their fees and costs spent defending this frivolous action, and plaintiff deserves to bear some portion of the responsibility for bringing and maintaining this case knowing there was no credible evidence to support his claims. As detailed below, this Court sanctions plaintiff's counsel for the cost of summary judgment in this action. Plaintiff is held joint and severally liable for these costs, in the amount of $19,075.[46] This assessment of fees — a substantial reduction from the $96,662.50 expended by the defendants over the eighteen month life of this action — balances defendants' entitlement to a recovery against plaintiff's relative lack of financial resources and plaintiff's counsel's sanctionable behavior under Rule 56(h).

## B. Sanctions Against Plaintiff's Counsel

### 1. Rule 56(h)

Defendants urge this Court to sanction plaintiff's counsel for his role in preparing and submitting Mrs. Jimenez's affidavit which, as described above,

---

[45] *Jimenez*, 2015 WL 5638041, at *7.

[46] The methodology for calculating this award is detailed below at footnote 52.

-15-

provides a highly suspect set of facts controverted by an array of independent and disinterested sources.[47] Plaintiff's counsel responds arguing that even if the facts set out in the affidavit are false, they did not strike him as blatantly false when he interviewed Mrs. Jimenez and prepared the affidavit, and therefore no sanctionable conduct occurred.[48]

As described above, Mrs. Jimenez's affidavit is entirely unsupported by any other evidence in the record, controverted by numerous contemporaneous accounts by impartial medical professionals, and very likely perjurious. The standard for levying sanctions against plaintiff's counsel, however, focuses on counsel's knowledge of these deficiencies when he prepared and submitted the affidavit — whether his actions rise to the level of bad faith.

Plaintiff's counsel personally drafted Mrs. Jimenez's affidavit, and read it to her through a translator before she signed the document.[49] When plaintiff's counsel did so, he was aware of the existence of the Ambulance Report, Ms. Cohen's affidavit, and the hospital records undercutting Mrs. Jimenez's testimony — records whose veracity plaintiff's counsel has never directly

---

[47]   *See* Def. Mem. at 9-13.

[48]   *See* Mouton Aff. ¶¶ 10, 16-22.

[49]   *See id.* ¶¶ 19-20.

-16-

impugned. While the affidavit restated Mrs. Jimenez's contrary version of events, however, it also contained a new discrepancy that could only have been inserted into the affidavit by plaintiff's counsel.

Central to this case was Detective Quilty's interview with Mrs. Jimenez on January 21, 2013 — the interview that created probable cause for plaintiff's arrest on charges of domestic assault. In plaintiff's original complaint, and in each of the two amended complaints filed in this action, plaintiff alleged that Quilty interviewed Mrs. Jimenez (who does not speak English), with Detective Lopez serving as translator.[50] This rendition of events was not disputed by defendants.

Because Mrs. Jimenez was the only individual other than Detectives Quilty and Lopez present at this meeting, it follows that Mrs. Jimenez told plaintiff's counsel that Detective Lopez translated the interview between Mrs. Jimenez and Detective Quilty as early as April 2014, at the commencement of this action. However, when it came time to oppose defendants' motion for summary judgment, Mrs. Jimenez's story abruptly changed — in her affidavit, Mrs. Jimenez swore that Detective Lopez had never spoken to her at all, and the conversation

---

[50]    *See* Compl. at ¶¶ 39-43 ("Approximately 2 weeks after December 26, 2012, Defendants Quilty and Lopez, who spoke Spanish, went to Mrs. Jimenez's home. While there, Defendant Lopez spoke with Mrs. Jimenez in Spanish. . . . Defendant Lopez conveyed all of this information to Defendant Quilty.").

-17-

between her and Officer Quilty had been translated by Mrs. Jimenez's daughter — who was not mentioned as even being present for the interview in plaintiff's pleadings.

Plaintiff's counsel attempts to explain this shift by saying he had misunderstood Mrs. Jimenez's account of events from his earlier interviews with her, and that the new story contained in her affidavit is the true version of events.[51] He cites two interviews with Mrs. Jimenez prior to filing her affidavit as evidence that he took care to ensure the document's accuracy. He does *not*, however, supply any explanation for the change in Mrs. Jimenez's story other than a misunderstanding that apparently persisted over three rounds of filing the Complaint in this action, and makes no attempt to answer defendants' charge that, especially given the weight of the evidence rebutting Mrs. Jimenez's story, he knew or should have known the information he was submitting to the Court was false.

This Court warned plaintiff's counsel, on the record, that Mrs. Jimenez's recantation of her assault and subsequent recasting of events — made in the face of overwhelming evidence to the contrary — could not be reduced to a

---

[51]     *See* Mouton Aff. ¶ 18.

sworn statement without consequence.[52] Plaintiff's counsel clearly understood that Mrs. Jimenez's recantation, no matter how patently unbelievable, was the only evidence he had that supported plaintiff's claims, and so — in spite of this Court's warning — he authored the affidavit, had Mrs. Jimenez sign it, signed that affidavit in his role as notary public, and submitted the affidavit in opposition to defendants' motion. Assuming — without determining — that plaintiff's counsel did not have actual knowledge that Mrs. Jimenez's affidavit was false, this willful blindness to the obvious and fatal flaws in Mrs. Jimenez's story rises to the level of egregious behavior requiring a finding of bad faith in submitting the affidavit to this Court. Plaintiff's counsel is therefore sanctioned pursuant to Rule 56(h) for the costs defendants incurred in researching and preparing their summary judgment papers in this action — $19,075.[53]

---

[52] *See* Transcript of 6/18/15 Conference at 18:13-21.

[53] The Court arrived at this number through an examination of defendants' fee application. *See* Time Billed By Defendants' Counsel, Exhibit C to the 10/9/15 Declaration of Tobias E. Zimmerman in Support of Defendants' Motion for Attorneys' Fees and Sanctions. The Court manually computed the amount of time billed by defendants' counsel towards research and brief/motion practice during the summary judgment period, and multiplied this time by defendants' submitted blended rate of $350 per hour — a blended rate plaintiff does not dispute as unreasonable in his opposition, and that is in line with other fee awards granted to experienced attorneys in section 1983 cases. *See, e.g., Greene v. City of New York*, No. 12 Civ. 6427, 2013 WL 5797121, at *4 (S.D.N.Y. Oct. 25, 2013) (finding the rate of $375 per hour to be on par with rates charged by seasoned civil rights solo practitioners).

## 2. Other Sources of Authority for Sanctions

Defendants' arguments for sanctioning plaintiff's counsel under this Court's inherent authority or under section 1927 are unavailing — plaintiff's conduct in the earlier phases of this litigation, while far from ideal, does not rise to the level of provable bad faith.

Defendants argue that sanctions are warranted due to plaintiff's counsel submitting a Complaint with several unsupported claims, including claims for conspiracy and unlawful stop and search.[54] These claims were voluntarily withdrawn by plaintiff's counsel in meetings with the Court prior to the filing of defendants' motion to dismiss, and do indeed appear to be completely and utterly without support in the record. However, an over-inclusive Complaint does not itself vexatiously multiply litigation — indeed, if that were the case an attorney could be sanctioned every time she agreed to withdraw claims included in the original complaint which, over the course of discovery, were proven baseless. A refusal to withdraw such a claim may be sanctionable behavior, but timely dropping baseless claims, as plaintiff's counsel did here, is not.

Defendants further argue that sanctions are warranted due to various tactics undertaken by plaintiff's counsel during fact discovery, including overbroad

---

[54]  *See* Def. Mem. at 7-8.

discovery requests and discovery requests related to claims previously dismissed by this Court.[55] These actions, however, did not vexatiously multiply proceedings, as defendants objected to the overbroad requests shortly after their filing, and those objections were sustained by this Court. Furthermore, these requests — while indeed repetitive, and in some cases only vaguely relevant to plaintiff's claims — are not "so completely without merit as to require the conclusion that they must have been taken for some improper purpose such as delay."[56]

## VI. CONCLUSION

For the foregoing reasons, defendants' motion for attorneys' fees and sanctions is GRANTED in part. Attorneys' fees are granted against Patricio Jimenez and sanctions under Rule 56(h) are granted against plaintiff's counsel Gregory Mouton, who are jointly and severally liable for the total amount of $19,075.00. The Clerk of the Court is directed to close this motion (Dkt. No. 124).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           December 9, 2015

---

[55]     *See id.* at 9.

[56]     *Oliveri*, 803 F.2d at 1273.

-21-

## -Appearances-

### For Plaintiff:

Gregory P. Mouton, Jr., Esq.
The Law Office of Gregory P. Mouton, Jr.
305 Broadway, 14th Floor
New York, NY 10007
(646) 706-7481

### For Defendants:

Tobias E. Zimmerman
Senior Counsel
City of New York Law Department
100 Church Street
New York, NY 10007
(212) 356-2661

Case No.: 14-CV-2994 (SAS)(FM)
SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF WESTCHESTER

PATRICIO JIMENEZ,

Plaintiff,

   - against -

THE CITY OF NEW YORK, DETECTIVE JAMES QUILTY, DETECTIVE MIGUEL
LOPEZ and JOHN/JANE DOE #1,

Defendants.

# NOTICE OF APPEAL

**GREGORY MOUTON, ESQ.**
**BY: POLLACK, POLLACK, ISAAC & DE CICCO**
*Attorneys for the Plaintiff*
225 Broadway, Suite 307
New York, NY 10007
(212) 233-8100

To:
Attorney(s) for

*Pursuant to 22 NYCRR 130-1.1, the undersigned, an attorney admitted to practice in the
courts of New York State, certifies that, upon information and belief and reasonable
inquiry, the contention contained in the annexed document are not frivolous.*

*Dated*: _____      *Signature*: _____

                         *Print Signer's Name*: _____

Service of a copy of the within
Dated:

…………………………..
Attorney(s) for
